UTAH GAS PIPELINES CORPORATION, Plaintiff,

v.

EL PASO NATURAL GAS COMPANY, Mountain Fuel Supply Company, and Sinclair Oil & Gas Company, Defendants.

No. C 103–64.

United States District Court
D. Utah,
Central Division.

Sept. 24, 1964.
As Corrected Oct. 5, 1964.

Brigham E. Roberts, of Rawlings, Wallace, Roberts & Black, Salt Lake City, Utah, C. Keefe Hurley, Earle C. Cooley, and Hale & Dorr, Boston, Mass., for plaintiff.

Dennis McCarthy, and L. R. Gardiner, Jr., of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, and Gregory A. Harrison, Atherton Phleger, and Robert S. Daggett, of Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant El Paso Natural Gas Co.

Harley W. Gustin, and Edward F. Richards, of Gustin, Richards & Mattsson, Salt Lake City, Utah, Angus A. Davidson, Hunter L. Johnson, Tulsa, Okl., John P. Akolt, and Robert A. Dick, of Akolt, Shepherd & Dick, Denver, Colo., for defendant Sinclair Oil & Gas Co.

Joseph S. Jones, C. E. Henderson, and Donald B. Holbrook, of Ray, Rawlins, Jones & Henderson, Salt Lake City, Utah, for defendant Mountain Fuel Supply Co.

CHRISTENSEN, District Judge.

This is a private antitrust suit brought by plaintiff Utah Gas Pipelines Corporation pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15) to recover treble damages, attorneys' fees and costs for alleged violation by all of the defendants of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2), and by the defendant El Paso Natural Gas Company, of Section 7 of the Clayton Act (15 U.S.C. § 18).

It is alleged in the complaint, with supporting and explanatory details, in substance that El Paso, in an effort to secure a monopoly in the natural gas pipeline industry in various Western states, had acquired the stock and assets of Pacific Northwest Pipeline Corporation; that with its consequently enlarged base it sought to restrain and eliminate competition for gas supplies in Utah and the remainder of the Mountain States Area, and to monopolize the industry, and with this object and purpose El Paso combined and conspired with Mountain Fuel to delimit their respective spheres of control of the industry, to reserve to Mountain Fuel its monopoly power in Utah while eliminating competition between them and from others for gas supplies, and to exclude competitors and potential competitors from the natural pipeline industry in Utah. It is further alleged that Sinclair later joined this conspiracy, thereby adopting its aims and prior execution and thereupon becoming an active participant.

The plaintiff corporation, according to the complaint, was formed for the purpose of constructing and operating a natural gas pipeline in Utah. Plaintiff partially implemented its plans to construct, own and operate a pipeline for the pur-

pose of transporting natural gas to the Kennecott plant near Salt Lake City, Utah, through tripartite negotiations and tentative or attempted agreements with the Kennecott Corporation and Utah gas producers. It is further alleged that plaintiff was deprived of sources of supply and was twice prevented from completing such agreements by reason of the conspiracy among the defendants.

Although plaintiff asserts its Sherman Act claims against all defendants, against El Paso only the plaintiff claims a violation of Section 7 of the Clayton Act in that El Paso, while engaging in interstate commerce and in the course of such commerce, acquired the stock and assets of Pacific Northwest Pipeline Corporation, engaged also in interstate commerce; and that the effect has been and may be to substantially lessen competition or to tend to create a monopoly in the natural gas pipeline industry in Utah, Colorado, Wyoming and the Ten State Area.

Plaintiff further alleges that El Paso, through the above mentioned conduct of the defendants, has acquired unchallenged dominance of the natural gas pipeline industry in the Ten State Area. The conspiratorial and monopolistic goals of El Paso and Mountain Fuel Supply having thus been achieved, defendants have suppressed competition and monopolized the industry in the mountain states, deprived plaintiff of income and access to assets, destroyed the value of plaintiff's business, restricted competition to the injury of the plaintiff as well as the public, destroyed plaintiff's business and eliminated plaintiff as a competitor, to plaintiff's single damage in excess of $40,000,000.00, the trebling of which amount plaintiff prays for as damages herein, together with attorneys' fees, costs and general relief.

Sinclair Oil & Gas Company has moved to dismiss the complaint both generally and as to the monopolization claim in particular, upon the ground that the complaint fails to state a claim upon which relief can be granted. It has also moved to dismiss the complaint for alleged lack of jurisdiction by the court over the subject matter of the action. As an alternative, said defendant moves the court, pursuant to Rule 21, F.R.C.P., to sever and proceed separately with the alleged claim of violation of Section 7 of the Clayton Act (15 U.S.C. § 18), and to drop the defendant as a defendant thereto. If the latter motion be not granted, said defendant asks that there be stricken from paragraphs 16, 17, 18, 19, 20, 21, and 22, and elsewhere where they may appear in the complaint, all allegations with reference to the acquisition by the defendant El Paso Natural Gas Company of the stock and assets of Pacific Northwest Pipeline Corporation alleged to be in violation of Section 7 of the Clayton Act. If this motion be not granted, said defendant moves that the plaintiff be required in compliance with Rule 10(b) of F.R.C.P. to state in separate counts the several causes of action allegedly commingled in one count, namely (a) the cause of action based upon alleged violation of Section 7 of the Clayton Act; (b) the cause of action for violation of Section 1 of the Sherman Act (15 U.S.C. § 1); and (c) the cause of action based upon alleged violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

The defendant Mountain Fuel Supply Company has moved for dismissal of the complaint upon the grounds that (1) it fails to state a claim upon which relief can be granted, particularly because (a) plaintiff's claim under Section 4 of the Clayton Act (15 U.S.C. § 15) depends upon the solution of issues the determination of which is within the primary administrative jurisdiction of the Public Service Commission of the State of Utah; (b) plaintiff has not been injured in its business or property by reason of anything forbidden in the antitrust laws of the United States; (c) plaintiff's action is a collateral attack on orders of the Public Service Commission of the State of Utah made in the exercise of its exclusion jurisdiction; (d) the complaint does not allege injury to the public; (2) that plaintiff has failed to join an indispensable party, i. e., Trans-Utah Pipe-

lines, Inc., and (3) the court lacks jurisdiction over the subject matter of the action because of the foregoing contentions and because the plaintiff's claims do not arise under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies as provided in Title 15 United States Code. Mountain Fuel Supply also joins in the motion of Sinclair for severance and for separate statements of claims, and adds a motion to strike from the complaint all allegations concerning Trans-Utah Pipelines, Inc., appearing in paragraphs 25, 27, 28, 29, 30 and 31 of the complaint.

El Paso Natural Gas Company has moved to strike from the complaint portions of paragraphs 16, 24, 25, 29, 31, 43, 48, 52, and the whole of paragraphs 17, 18, 19, 20, 21, 22, 23, 27, 28, 30, 45, 46, and 49 of the complaint, relating to the acquisition of common stock and assets of Pacific Northwest Pipelines Corporation by El Paso and the subsequent mandate for divestiture from the Supreme Court, and to Trans-Utah Pipelines, Kennecott Copper Corporation and the "Rock Springs" project.

In addition to the motions directed against the pleadings, defendant Sinclair has asked that its motion to dismiss be considered in effect a motion for summary judgment pursuant to Rule 12(b) F.R.C.P. in view of tendered affidavits going to the merits of the case.

The questions before the court have been fully and ably argued and briefed and are now presented for decision.

It seems inappropriate on the threshold of a case such as this to accept the affidavits of Sinclair as a conversion of the problems to one of summary judgment, without fuller opportunity for exploration, discovery and responses. The Sinclair affidavits, therefore, have been excluded by the court from consideration, as authorized by the rule upon which Sinclair relies. Thus the motions for determination are directed to the complaint as now framed, and depend for determination upon the allegations of the complaint which at this stage must be taken as true, together with reasonable inferences to be drawn therefrom favorably to the pleader.

Sinclair and El Paso contend that the court lacks jurisdiction in one sense or another. Absence of jurisdiction over the subject matter of the action does not appear from the face of the complaint; on the contrary the court's jurisdiction to consider the alleged claims themselves and whether or not they are sufficient in law to require answer, does appear. The general assertions that the court does not have jurisdiction are without merit and the motions insofar as based upon an asserted lack of jurisdiction are denied. What is really meant by the parties, no doubt, is that the power of the court is not sufficiently invoked to authorize relief because of the inadequacy of the complaint to state a claim for relief against particular defendants, the absence of indispensable parties or the insufficiency of alleged facts to entitle the plaintiffs to prevail. See Deseret Apartments, Inc. v. United States, 10th Cir., 250 F.2d 457, 459 (1957); St. Joseph Land Co. v. MacLean, 8th Cir., 32 F.2d 984, 987 (1929).

It is insistently contended by Mountain Fuel, supported by the other defendants, that this action should be dismissed because plaintiff's claim for relief under Section 4 of the Clayton Act (15 U.S.C. § 15) [1] depends upon the solution of issues the determination of which is within the primary administrative jurisdiction of the Public Service Commission of Utah (Secs. 54–2–1 and 54–4–1, Utah Code Annotated 1953). Reliance is placed upon Interstate Nat. Gas Co. v. Southern

1. "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

California Gas Co., D.C.S.D.Cal., 102 F. Supp. 685 (1952), rehearing 103 F.Supp. 317 (1952), affirmed 9th Cir., 209 F.2d 380 (1953); McClellan v. Montana-Dakota Utilities Co., D.C.D.Minn., 104 F. Supp. 46 (1952), affirmed 8th Cir., 204 F.2d 166 (1953), cert. denied, 346 U.S. 825, 74 S.Ct. 43, 98 L.Ed. 350, and various non-antitrust cases. Defendants see nothing in California v. Fed. Power Comm'n., 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962), and United States v. El Paso Nat. Gas Co., 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964), which militates against the persuasion of these decisions.

While impressive and even formidable are defendants' arguments on the difficulty, if not impossibility, of proof by plaintiff of damages for loss of business dependent upon the discretionary action of the state agency, I have concluded that they do not preclude possible liability upon the allegations of the complaint. In other words, I reserve judgment whether the doctrine of Bigelow v. RKO Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946), and Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931), will apply to soften the dilemma as to damages or to authorize recovery of something beyond nominal damages. But I do not agree that the question of damages, as such, can never be resolved even though the defendants by unlawful combination have precluded an opportunity for plaintiff to apply to the State regulatory agency.

■ If we now take the allegations of the complaint as true, with inferences reasonably to be drawn therefrom, it is made to appear that by monopolistic and conspiratorial conduct the defendants have effectively stopped the plaintiff, in its efforts to compete, short of the point at which it could seek authority within the competence of the State regulatory agency to grant. The defendants could not with complete impunity unlawfully trip and permanently eliminate the plaintiff before it could cross intervening hurdles not dependent upon State regulatory action. Whether defendants have done this should not be decided against the contentions contained in the complaint at this point; whether or not plaintiff has been so tripped and eliminated, or has voluntarily run around an essential hurdle of administrative approval, cannot be resolved on the present pleadings, but must await further developments in the case.

I find the basis for this ruling in California v. Federal Power Commission, 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962) and United States v. American Natural Gas Company, D.C.N.D.Ill., 206 F.Supp. 908 (1962); see also United States v. Frankfort Distilleries, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945).[2] The cases relied upon by defendants generally do not deal with anti-competitive conduct which destroyed competition prior to the time a regulatory agency could have made a meaningful determination. They seem to turn primarily upon a found failure to exhaust administrative remedies reasonably available to the complainant at the time.

■ Akin to, if not merely another aspect of the question last discussed, is the assertion that plaintiff's action is an impermissible collateral attack on the orders of the Public Service Commission of the State of Utah, made in the exercise of its exclusive jurisdiction, granting a certificate of public convenience and necessity to Mountain Fuel Supply and approving its contracts and acquisitions. Obviously State regulation does not purport to, and could not, pre-empt the natural gas pipeline field to the exclusion of the Federal antitrust laws. In the nat-

2. For various ramifications of the subject, and a criticism of California v. Federal Power Commission, 369 U.S. 482, 82 S. Ct. 901, 8 L.Ed.2d 54 (1962) supra, reference may be made to Jaffe, "Primary Jurisdiction", 77 Harvard Law Review 1037 (Apr. 1964).

ural gas industry "antitrust considerations" may be deemed relevant to the issue of public interest, convenience and necessity but there is no "pervasive regulatory scheme" entrusted to the State agency, any more than to the Federal Power Commission. See California v. Fed. Power Comm'n., 369 U.S. 482, 485, 82 S.Ct. 901 (1962), supra, and United States v. R.C.A., 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959).

■ Sinclair's and Mountain Fuel's motion to dismiss the complaint because interstate commerce is not sufficiently shown must fail in view of the broad reach of the antitrust laws to the full extent of the power of the Congress over interstate commerce, the broad allegations of the complaint, the inherent nature of the industry involved and controlling decisions emphasizing that it is sufficient if the activities in question affect, even though they do not directly involve, interstate commerce.

It has been argued that the conduct of the defendants described in the complaint, "if there are eliminated El Paso's acquisition of Pacific Northwest and the so-called Rock Springs project in which Mountain Fuel and Sinclair were not involved", concerned only commerce within the State of Utah; that while an overall conspiracy to create a monopoly and restrain trade in interstate commerce is alleged, the supporting allegations refer to matters which affect only intrastate commerce.

It is alleged in the complaint after a recitation of the history of El Paso's claimed ascension to power:

"Thus, while the acquisition of Pacific Northwest gave to El Paso unchallenged dominance of the natural gas pipeline industry in the Ten State Area, its plan and attempt to monopolize and to eliminate competition in said area contemplated the support, cooperation and assistance of Mountain Fuel, whose position of primary power in the natural gas pipeline industry in Utah was firmly established. Mountain Fuel furnish-

ed said support, cooperation and assistance by contracting, combining and conspiring with El Paso * * "

It is further alleged that by means of this conspiracy, joined by Sinclair in 1962, defendants have suppressed competition and have dominated, controlled and monopolized the natural gas pipeline industry in Utah, the Mountain States Area (defined in the complaint as the States of Colorado, Utah and Wyoming), and the Ten States Area (defined in the complaint as the states of Colorado, Utah, Wyoming, Arizona, Nevada, New Mexico, Idaho, California, Oregon and Washington).

■■ The defendants say that such allegations are mere conclusions, and Mountain Fuel particularly argues that it and El Paso were not in competition. It has been established that the means of interstate commerce may not be employed to injure even local trade through unlawful combinations, and that courts are not confined to an examination of the plaintiff's transactions to ascertain whether interstate commerce is affected. Moore v. Mead's Fine Bread Co., 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145 (1954). The Congressional intent is broad enough to cover the local entrepreneur opposed by interstate combinations conspiring to preserve their existing market positions and accomplish future market encroachments. While in Mead's, the more limited reach of the Robinson-Patman Act was involved, in the Sherman Act Congress left no area of its constitutional power over interstate commerce unoccupied, United States v. Frankfort Distilleries, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945). Intrastate activities may apply the pinch illegally upon interstate commerce. United States v. Women's Sportswear Mfg. Ass'n., 336 U.S. 460, 69 S.Ct. 714, 93 L.Ed. 805 (1949). And victims in a position to complain of interstate monopolies or conspiracies are not limited to those conducting wide scale activities. Klor's, Inc. v. Broadway-Hale Stores, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed. 2d 741 (1959).

■ The motion in reliance upon Rule 10(b) F.R.C.P. for separate statements of the Sherman Act claims, so that the Section 1 claim of conspiracy would be presented and considered separately from the Section 2 monopoly claims is unsupported by authority, reason or practicality. Both of these claims concern all parties, they involve common questions of fact, a consideration of the charged conspiracy to monopolize cannot practically be isolated from the charged attempted monopolization through conspiracy. While the intermingling of facts pose problems in a submission to a jury, they are problems that have been met and must be met and which would not be simplified by any separate statement in the complaint.

■ In a different position is the Section 7 claim against El Paso. As such, it does not concern the other defendants. While some of the facts upon which it depends are relevant to the conspiracy and monopoly claims, their additional separate statement particularly directed against El Paso would be neither difficult nor extensive. Such separate statement could simplify the problem of submission to the jury of the issues involving the respective parties and would focus the issues with reference to the defendants involved. A separate statement of the Section 7 claim will be required, particularly in view of its present insufficiency in other respects to be hereinafter pointed out.

■ To the extent motions are directed toward a severance of this claim from the case itself in reliance upon Rule 20 (a), or a separate trial by virtue of Rule 42(b), F.R.C.P., such motion should be denied. The common issues of fact and law which are deemed sufficient to justify joinder of the two counts appear likely as a practical matter to warrant their trial together. Time enough to determine this latter point if and when a sufficient Section 7 claim is stated and something of further persuasion appears in relation to the trial itself.

No final ruling will be made at this time whether in the context of this case recovery may be had solely for violation of Section 7 of the Clayton Act.[3] It is deemed inappropriate to pass upon the effect or persuasion of various decisions in this area which suggest under one circumstance or another different answers[4] until the allegations of the complaint with reference to Section 7 are further brought into focus.

But assuming that a private suit under some circumstances may be premised upon a violation of Section 7, without reference to the Sherman Act, does the complaint state facts sufficient to warrant relief against El Paso solely by virtue of Section 7 of the Clayton Act?

■ The acquisition of Northwest Pipeline Company is alleged in the complaint, and the court judicially knows that divestiture was ordered by the Supreme Court upon suit of the government by reason of violation of Section 7 of the Clayton Act. United States v. El Paso Nat. Gas Co., 376 U.S. 651, 84 S.Ct. 1044 (1964), supra. El Paso argues that the decree of divestiture was granted solely because of possible incremental market

---

3. 15 U.S.C. § 18, 38 Stat. 731, as amended by the Celler-Kefauver Anti-Merger Act, 64 Stat. 1125, provides in pertinent part: "No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly. * * *"

4. Highland Supply Corp. v. Reynolds Metals Co., 8th Cir., 327 F.2d 725 (1964); Gottesman v. General Motors Corporation, D.C.S.D.N.Y., 221 F.Supp. 488 (1963); cf. New Jersey Wood Finishing Co. v. Minnesota Min. & Mfg. Co., 3rd Cir., 332 F.2d 346 (1964); United States v. Penn-Olin Chemical Co., 378 U.S. 158, 84 S.Ct. 1710, 12 L.Ed.2d 775 (1964).

demands and, since we are not dealing with mere possibility here, but a necessity for actual impact, that it is impossible to state a cause of action under Section 7. Defendant is unable to perceive how, under the facts stated in the complaint, the separate existence of Northwest Pipeline could have had any effect upon the plaintiff. The plaintiff can't sue for divestiture because that has already been ordered, and no future damages by reason of the acquisition will be suffered says El Paso. Nor could there have been any past damages, it is argued, since Pacific Northwest had not even the remotest connection with plaintiff and the acquisition occurred long before plaintiff came into existence. It is correctly pointed out that the economic effects of an acquisition are to be measured at the time of suit rather than at the time of acquisition. United States v. Penn-Olin Chemical Co., 378 U.S. 158, 84 S.Ct. 1710 (1964), supra.

 Whether the plaintiff as an independent Section 7 claim can properly allege that at the time of suit the acquisition itself had damaged it, with sufficient foundationed facts to support such conclusion, must await the evaluation of an amended pleading. No such allegations appear in the complaint before me.

Summary reference is made in paragraph 16 of the complaint to the claimed violation of Section 7 by El Paso and it is alleged in paragraph 21 of the complaint that "(t)he effect of the aforementioned acquisitions has been and may be substantially to lessen competition or to tend to create a monopoly in the natural gas pipeline industry in Utah, Colorado, Wyoming, and the Ten State Area." And it is alleged in the closing paragraphs of the complaint that "the conduct" of the defendants—whether in respect of the acquisition or the monopolization and conspiracy or both had various anti-competitive results and damaged the plaintiff in the amount of $40,000,000.00. But nowhere is it stated that the acquisition itself as a violation of Section 7 of the Clayton Act had any impact or effect upon plaintiff apart from its furnishing a base or foundation for the Sherman Act claims.

If the acquisition is only significant in relation to the Sherman Act claims, the allegations should rest there. If there is claimed to be separate liability under Section 7 of the Clayton Act, there must be at least some indication that damages were caused to the plaintiff's business or property by those separate circumstances.

 The motion to dismiss the complaint because of alleged failure of plaintiff to join Trans-Utah Pipelines, Inc. as "an indispensable party" is without merit. Trans-Utah is referred to in the complaint as the predecessor of the plaintiff corporation and there are recited some of the activities of the former in attempting to enter the natural gas pipeline industry in Utah. No claim for damages is made for or on behalf of Trans-Utah. Whether the reference in the pleading to Trans-Utah are relevant to plaintiff's claims is another question, a consideration of which will be reserved until the defendants' motions to strike are considered.

The defendants says that the complaint must fail because public injury flowing from the alleged conspiracy and monopolization is not shown.

It does not appear that an express allegation of public injury would be essential. Continental Ore Co. v. Union Carbide, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); Radiant Burners, Inc. v. Peoples Gas Light & Coke Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); Klor's, Inc. v. Broadway-Hale Stores, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); Switzer Brothers, Inc. v. Locklin, 7th Cir., 297 F.2d 39 (1961), cert. denied 369 U.S. 851, 82 S.Ct. 934, 8 L.Ed.2d 9. Particularly is this so in view of the allegations from which public injury may be inferred and the per se nature of the violation charged. See New Home Appliance Center, Inc. v. Thompson, 10th Cir., 250 F.2d 881 (1957). But if it were, the re-

quirement would be met by paragraph 52 of the complaint in which it is stated:

"By reason of the conduct hereinbefore alleged, the natural gas pipeline industry in Utah, the Mountain States area, and the Ten State Area is not open, free and competitive, but on the contrary is closed, restricted and restrained, all of which has resulted in great injury to the public, the plaintiff, Kennecott and sellers of natural gas."

The allegations of damage or impact against plaintiff as they appear in the complaint are asserted by the defendants to be insufficient; first, because no proper damage to "business" or "property" has been alleged and second because under the circumstances alleged the plaintiff had no business to be damaged and there was no real preparation nor any feasible way that plaintiff could have entered the industry in question in view of its regulation by the State administrative agency—before it could hope to commence business it would have had to obtain a certificate of public convenience and necessity. The defendants further say in effect that there was no property right interfered with or damaged because the "tripartite agreement" was never consummated by plaintiff, and that it had only a vain hope rather than any business to be injured or frustrated.

▮▮▮ The overhang of this argument, essential for coverage of plaintiff's situation, is not supported by the law in one respect and by the averred facts in another. Some of the reasons for this belief are suggested in the preceding discussion of the question of primary jurisdiction. The thesis is rejected that under no circumstances can an antitrust suit be successfully maintained for damages from conspiracy or monopoly in the gas pipeline industry by any company which is not actually doing business in that industry as the recipient of a certificate of public convenience and necessity from the State or Federal regulatory body. If so, competition could be frustrated with impunity by established companies through the simple expedient of picking off and eliminating potential competition before it could reach the certification stage. That this would be at variance with the spirit and intent of the antitrust laws has been again forcefully suggested in principle in United States v. Penn-Olin Chemical Co., 378 U.S. 158, 84 S.Ct. 1710 (1964), supra, as well as by United States v. El Paso Nat. Gas Co., 376 U.S. 651, 84 S.Ct. 1044 (1964), supra, where potential competition at the edge of the market was an important consideration, and has been demonstrated in application to private antitrust suits in North Texas Producers Association v. Young, 5th Cir., 308 F.2d 235 (1962); Delaware Valley Mar. Sup. Co. v. American Tobacco Co., D.C.E.D.Pa., 184 F.Supp. 440 (1960).

Plaintiff must show injury to its business or property by reason of defendant's alleged violations of the antitrust laws. But business is a word of broad connotation and a business need not be fully developed to sustain injury.

Even though there were no "business" subject to injury, injury to plaintiff's property would be actionable if otherwise a basis of liability existed. In Waldron v. British Petroleum Co., Ltd., D.C.S. N.Y., 231 F.Supp. 72, the court said:

"The statute does not set up a qualitative or quantitative test to determine the existence of 'property.' Nor does the statute contain a built-in definition.

"The word 'property' is, in a sense, a conclusory term, i. e., an interest which the law protects. A determination whether plaintiff has 'property' involves a value judgment as to whether that which plaintiff factually possesses should be legally protected. If it be decided that the rights, privileges and powers possessed by plaintiff should receive judicial sanction, that conclusion would be expressed by declaring that plaintiff possesses 'property.'"

Plaintiff alleges that it suffered damages by reason of the defendants' conspiracy and monopoly, relating these expressly to its "business". It is true that plaintiff does not allege in terms that the plaintiff's property, as well as its business, was injured in the sense contemplated by Waldron. Yet by fair implication this seems to follow from the allegation of the complaint as a whole, and pending clarification by amendment or evidence, the complaint in this respect seems reasonably sufficient.

The evidence no doubt will disclose whether plaintiff failed because it failed to apply for available remedies before the Public Service Commission or failed to lay, independently of any conspiracy or monopoly among the defendants, a proper basis for any such application, or because it had inadequate capital or lacked inherent capability to succeed, or because it was prevented from developing its business or utilizing its property as a proximate result of conspiracy or attempts at monopoly among the defendants. These questions cannot be resolved solely upon the basis of the complaint, which alleges in effect that the cause of failure was the unlawful conspiracy and/or monopoly described therein.

Some of the foregoing rulings or supporting reasons in effect will have disposed of a portion of the motions to strike.[5]

The allegations concerning the acquisition by El Paso of Pacific Northwest are deemed so connected with the Sherman Act claims to be invulnerable to such a motion. Allegations of impact of the alleged conspiracy upon Kennecott are sufficiently germane to stand—for even better reasons than that defendants themselves have asserted public injury is essential to a proper claim. The reference in the complaint to Utah Natural Gas Company, substantially owned by El Paso, is relevant to plaintiff's theory and

seems a reasonable allegation for its factual development.

The relevancy or justification of paragraph 23 concerning the so-called Rock Springs project cannot be perceived. There is no allegation that the project materialized or affected the competitive situation in and of itself, its inclusion may involve prejudice or confusion and it seems to add nothing to the statement of plaintiff's essential claims.

The other references objected to either have proper place in the complaint or have some possible relevancy and are not deemed prejudicial, especially in view of our practice of withholding from the jury the phraseology of the pleadings as such.

The complaint states claims under the Sherman Act upon which relief can be granted if they are established. Hence, finally, the motion to dismiss on the general contentions that they do not must be denied.

The motions upon which rulings have been made are designed merely to test the legal sufficiency or propriety of the allegations of the complaint, assuming them to be true. It is meant in no way here to pass upon what the facts ultimately may show, or the merits of the case under the facts to be established.

In summary:

The motion to dismiss the Section 7 claim of plaintiff against El Paso is sustained for the reasons above stated. The plaintiff is allowed 20 days to file an amended complaint and, particularly, amended allegations against El Paso for violation of Section 7 of the Clayton Act if it further seeks to maintain such claim. Any Section 7 claim shall be set out as against El Paso in a self sufficient count separate from The Sherman Act claims. In all other respects the defendants' motions are denied, except with respect to paragraph 23 of the complaint, which is stricken.

5. While the filing of an amended complaint by plaintiff technically may render rulings on the motions to strike moot, I have indicated them in an effort to avoid wasted time in rearguing future motions covered by the views herein expressed.

Upon the filing of the amended complaint the defendants, in harmony with the determination of the preliminary pretrial conference, shall have 30 days to answer. Objections, if any, of the defendant El Paso that the amended Section 7 count does not state a claim upon which relief can be granted may be included in its answer and called up for hearing at the next pre-trial conference. Within 60 days hereafter the parties are requested to file a stipulation of basic and background facts concerning which there is no controversy. An interim pre-trial conference will be set for January 7, 1965, 10 a. m., at which time the remaining controverted issues of the case will be tentatively framed and discovery, thus far held in abeyance by agreement of the parties, will be authorized and charted.