DAIRY FOODS INCORPORATED,
Plaintiff,

v.

FARMERS CO–OPERATIVE CREAM-
ERY, Defendant,

Weldon Farm Products, Inc., Defendant,
Cross-Claimant and Third-Party
Plaintiff.

WELDON FARM PRODUCTS, INC.,
Defendant, Cross-Claimant and
Third-Party Plaintiff,

v.

BLAW–KNOX COMPANY, Third-Party
Defendant.

No. 4–66 Civ. 166.

United States District Court

D. Minnesota.
Fourth Division.

April 22, 1969.

Hume, Clement, Hume & Lee, Chicago, Ill., by Henry L. Brinks and James P. Hume, Chicago, Ill., for plaintiff.

Merchant & Gould, Minneapolis, Minn., by John D. Gould and Cecil C. Schmidt, Minneapolis, Minn., for defendant Weldon Farm Products Inc.

NEVILLE, District Judge.

Before the court in this patent infringement suit is a motion to strike an amended counterclaim served and filed by one of the defendants, Weldon Farm Products, Inc. (Weldon).

On November 12, 1968 the defendants moved the court for a summary judg-

ment on the ground, *inter alia*, that plaintiff's complaint did not allege compliance with 35 U.S.C. § 287 (marking of patented products) or that actual notice of the claimed patent infringement ever was given to defendants. Plaintiff thereupon moved the court to amend its complaint so as to allege compliance with 35 U.S.C. § 287 and that actual notice had been given defendants. This court by order dated February 3, 1969 granted plaintiff leave so to amend its complaint. In that order the court allowed defendants 20 days "within which to answer or otherwise plead to plaintiff's amended complaint or in default thereof the allegations of plaintiff's amended complaint shall be deemed traversed and denied without further pleading." Originally Weldon had interposed an answer in rather routine form and two counterclaims.

Within said 20 days defendant Weldon's amended counterclaims against plaintiff were served and filed. The first counterclaim in defendant Weldon's original set of pleadings is similar to its second counterclaim in the amended pleading. These counterclaims seek a declaratory judgment declaring three certain patents to be invalid, not infringed and unenforceable. This second amended counterclaim bears no new substantive allegations and the court therefore grants leave that such may stand as served.

Defendant Weldon's first amended counterclaim presents a different problem. The first amended counterclaim is similar to the original second counterclaim against plaintiff in that both allege violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2. As to these allegations, the first amended counterclaim appears to state more fully and more articulately the antitrust and patent misuse claims of Weldon. This refinement, counsel for Weldon states, has been made possible due to discovery. In the exercise of its discretion, the court allows the allegations contained in Weldon's first amended counterclaim to stand insofar as the same relate to viola-

tions of Sections 1 and 2 of the Sherman Act.

In addition to the above, however, Weldon's first amended counterclaim asserts a new antitrust violation not contained in the original set of pleadings. The amended counterclaim now alleges, in addition to violations of Sections 1 and 2 of the Sherman Act, a violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. At this late date in the lawsuit, nearly three years after its commencement, injection of this new and substantial issue raises serious problems. While Weldon was given the right by this court's order of February 3, 1969 to answer or otherwise plead to plaintiff's amended complaint, the court contemplated that any amendments by Weldon should relate to and would be in answer to plaintiff's amended allegations of compliance with 35 U.S.C. § 287 and of actual notice of claimed infringement. Weldon takes the position that under Rule 15(a) of the Federal Rules of Civil Procedure, once the court allowed an amendment, and particularly in view of the wording of the court's order of February 3, 1969, Weldon had an automatic right within 20 days to file new amended counterclaims even though unrelated to the amended allegations pleaded by plaintiff. The court need not decide the specific application of Rule 15 to the case at hand, for, in any event, Weldon would have the right as does any party to notice a motion for leave to amend its pleading or counterclaims under Rule 15. The court therefore in view of the decision hereafter treats this matter as though such a motion had been made.

Compelling reasons require that there be stricken from Weldon's first amended counterclaim any allegations relating to a claimed violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. The first amended counterclaim states in part as follows:

"14. Pursuant to the conspiracy herein described, DFI [the plaintiff] was created in 1958 by Carnation and Foremost for the purpose of pooling

and administering patents relating to instant milk and instant milk products; and subsequent to its creation, DFI entered the conspiracy and administered the patent pool so as to further the purposes of the conspiracy initiated by Carnation and Foremost. The (1) creation of DFI and (2) DFI's subsequent acquisition of patents for the patent pool were each in violation of Section 7 of the Clayton Act.

\* \* \* \* \* \*

16. All of the shares of the common stock of DFI have at all times been owned by Carnation and Foremost, each of which continues to own 50% of said stock."

Carnation Company is a Delaware corporation whose principal place of business is in Los Angeles, California. Foremost Dairies, Inc. is a New York corporation whose principal place of business is in San Francisco, California.

■ In the first place, the Eighth Circuit has rejected the argument that a private litigant has standing to allege a violation of Section 7 of the Clayton Act. In Highland Supply Corp. v. Reynolds Metals Co., 327 F.2d 725, 728 n. 3 (8th Cir.1964), the court said:

"We think that any effort to convert Section 7 of the Clayton Act into a *per se* violation of the antitrust laws so as to give rise to a private right of action under the Clayton Act has been squarely checked by what is said by Mr. Chief Justice Warren in Brown Shoe Co. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510. As interpreted in that case, Section 7 of the Clayton Act does not condemn all mergers, but only those having demonstrable anti-competitive effects. The statute deals with clearcut menaces to competition, not with accomplished monopolies, presently creating damage to a competitor, which is the *sine qua non* of a private right of action under Section 5 of the Clayton Act.

Section 7 of the Clayton Act was intended to supplement the Sherman Act and:

'primarily to arrest apprehended consequences of intercorporate relationships before those relationships could work their evil, which may be at or any time after the acquisition, depending upon the circumstances of the particular case.'

United States v. du Pont & Co., 353 U.S. 586, at 597, 77 S.Ct. 872, 1 L.Ed. 2d 1057. See this same case, 366 U.S. 316, 325–329, 81 S.Ct. 1243, 6 L.Ed.2d 318. That no private right of action accrues from such a violation, see: Independent Iron Works, Inc. v. United States Steel Corp., 322 F.2d 656 (9 Cir.1963); United States v. Continental Can Co., D.C., 217 F.Supp. 761, 767 (1963); United States v. Ingersoll-Rand Co., et al., 218 F.Supp. 530 (W. D.Penna.1963), aff'd 320 F.2d 509 (3 Cir.1963); Gottesman v. General Motors Corp., 221 F.Supp. 488 (S.D. N.Y.1963)."

On remand from the Eighth Circuit, the District Court dismissed the Section 7 allegations from plaintiff's amended complaint and reaffirmed its position on plaintiff's motion for reconsideration. Highland Supply Corp. v. Reynolds Metals Co., 238 F.Supp. 561 (E.D.Mo.1965); Highland Supply Corp. v. Reynolds Metals Co., 245 F.Supp. 510 (E.D.Mo.1965). Other courts when considering the same question have reached a similar result. See, *e.g.,* Bailey's Bakery, Ltd. v. Continental Baking Co., 235 F.Supp. 705 (D. Hawaii 1964), aff'd, 401 F.2d 182 (9th Cir.1968); and Utah Gas Pipelines Corp. v. El Paso Natural Gas Co., 233 F.Supp. 955 (D. Utah 1964). The court is not unaware however that other courts have permitted a private litigant to assert a Section 7 claim. See Dailey v. Quality School Plan, Inc., 380 F.2d 484 (5th Cir.1967); and Julius M. Ames Co. v. Bostitch, Inc., 240 F.Supp. 521 (S.D. N.Y.1965).

■■ In the second place, even had the Eighth Circuit not answered this

question, there are other reasons why Weldon's allegations as to Section 7 must be stricken. Weldon in its amended counterclaim states that plaintiff was created in 1958 by Carnation and Foremost. Section 4B of the Clayton Act, 15 U.S.C. § 15b, bars a private antitrust damage suit unless brought within four years after the cause of action arises. If the court were to hold that a private litigant could assert a Section 7 claim, it would seem that the cause of action would arise at the time of the merger or acquisition. See Julius M. Ames Co. v. Bostitch, Inc., 240 F.Supp. 521, 524 (S. D.N.Y.1965). Plaintiff's original complaint was filed on May 19, 1966. After several stipulations extending the time to answer and plead, Weldon filed its original answer and counterclaims on January 2, 1968. Even accepting the May 19th date, it is clear that Weldon's counterclaim was filed more than four years after 1958. Nor are there any allegations of fraudulent concealment by some "trick" or "contrivance" so as to toll the statute of limitations. See Laundry Equipment Sales Corp. v. Borg-Warner Corp., 334 F.2d 788, 792 (7th Cir.1964); Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80, 88, 90 A. L.R.2d 252, (2nd Cir.1961); and Crummer v. DuPont, 255 F.2d 425, 432 (5th Cir.1958).

The allegation of subsequent acquisition of patents for the patent pool so far as pleaded can only refer to the three patents here in suit. The court believes that the creation of plaintiff as a corporation and its patent acquisitions may well fall within the ambit of Section 7. See United States v. Penn-Olin Chemical Co., 378 U.S. 158, 84 S.Ct. 1710, 12 L. Ed.2d 775 (1964), on remand, 246 F. Supp. 917 (D.Del.1965), aff'd, 389 U.S. 308, 88 S.Ct. 502, 19 L.Ed.2d 545 (1967). ■ Section 7 prohibits acquisition of assets as well as corporate stock where "the effect of such acquisition may be substantially to lessen competi-

tion, or to tend to create a monopoly." Patents are assets and where two large business concerns own patents which may be similar in scope decide not to compete but to put both into a common corporation or pool of which each owns 50% of the stock, such may tend to lessen competition.

In any event, however, any claim against the acquisition (if indeed a private litigant can assert the same) is barred in this case by the statute of limitations. If other patents were acquired by plaintiff at a later time than 1958 to carry on the business activity of plaintiff, any anti-competitive effect resulting therefrom would seem to fall within Sections 1 and 2 of the Sherman Act. As stated in the case of Utah Gas Pipelines Corp. v. El Paso Natural Gas Co., 233 F.Supp. 955, 963 (D.Utah 1964):

> "If the acquisition is only significant in relation to the Sherman Act claims, the allegations should rest there. If there is claimed to be separate liability under Section 7 of the Clayton Act, there must be at least some indication that damages were caused to the plaintiff's business or property by those separate circumstances."

■ In the third place and in addition to all of the above, this lawsuit is now within a month of three years old, and hope is held that a trial of one or some of the issues may be possible within the next few months. Discovery and extensive preparation has taken place. The court does not feel that the injection of this new issue even though otherwise appropriate is proper or permissible at this time and to allow such would work prejudice to plaintiff.

In summary, the court will allow Weldon's amended counterclaims to be filed and stand with the exception that there is stricken therefrom any allegations relating to Section 7 of the Clayton Act, 15 U.S.C. § 18. A separate order has been entered.