**TELECTRONICS PROPRIETARY, LTD., Plaintiff,**

v.

**MEDTRONIC, INC., Defendant,**

v.

**TELECTRONICS, INC., Telectronics U.S.A., Inc. and Telectronics Pty. Ltd., Additional Defendants on Counterclaim.**

**No. 83 CIV. 8568 (PKL).**

United States District Court,
S.D. New York.

May 19, 1988.

---

834

Gottlieb, Rackman & Reisman, New York City, Michael I. Rackman, Allen I. Rubenstein, of counsel, for plaintiff and counterclaim defendants.

Quirk & Bakalor, P.C., New York City, Thomas E. Tookey, of counsel, and Medtronic, Inc., Minneapolis, Minn., Grady J. Frenchick, Marcia Bland Staten, Robert C. Beck, of counsel, for defendant.

## OPINION AND ORDER

LEISURE, District Judge.

This case has its origins in a patent-infringement suit brought before the International Trade Commission ("ITC") by Medtronic against Telectronics in July 1983. Telectronics Proprietary Ltd. initiated this action, seeking declaratory judgment of noninfringement and invalidity, in November 1983. Medtronic responded with its answer and a counterclaim for infringement of four patents; Telectronics replied by asserting the defense of a license.

After discovery in the ITC case,[1] Telectronics amended its complaint in this Court to assert antitrust claims. Medtronic first answered the amended complaint in November 1984, and included in its answer antitrust-based counterclaims. Later, in February 1986, Medtronic filed an amended pleading which included, *inter alia*, counterclaims based on antitrust law, patent law, and RICO, and affirmative defenses based on fraud, laches, unclean hands, and estoppel.

The following motions are now before this Court:

(1) Telectronics' motion under Fed.R. Civ.P. 12(b)(6) to dismiss Medtronic's first (Sherman Act §§ 1, 2) and third (RICO) counterclaims;

(2) Telectronics' motion under Fed.R. Civ.P. 12(f) to strike Medtronic's ninth (unclean hands), twelfth (laches, fraud, estoppel, and unclean hands), and fourteenth (failure to join an indispensable party) affirmative defenses;

(3) Medtronic's motion for judgment on the pleadings or summary judgment on Telectronics' Clayton Act § 7 claim;

---

1. The parties have now conducted extensive discovery in this case as well.

(4) Telectronics' motion for sanctions pursuant to Fed.R.Civ.P. 11 along with Medtronic's motion for summary judgment on this motion.

(5) Telectronics' motion for partial summary judgment that the defense of a license under the '242 patent is res judicata or issue precluded.

This opinion will address this motions seriatim.

## I. THE PARTIES

All of the parties in this action make and sell medical products including cardiac pacemakers.

Plaintiff Telectronics Proprietary Ltd., and counterclaim defendant Telectronics, Inc. are subsidiaries of counterclaim defendant Telectronics U.S.A., Inc. (hereinafter collectively "Telectronics"). Telectronics Pty., Ltd., an Australian company currently not a party to this suit, owns a majority interest in Telectronics U.S.A.

Defendant Medtronic owns several patents, four of which are involved in this suit: U.S. Patent Nos. 3,595,242, 3,648,707, 4,059,116, and 4,312,355. All four of these patents involve pacemaker technology; their validity is in dispute.

## II. TELECTRONICS' MOTIONS TO DISMISS

■■■ The function of a motion to dismiss under Rule 12(b)(6) is to test the adequacy of the statement of a claim for relief made in any pleading. In considering a Rule 12(b)(6) motion, the court should confine its inquiry to the pleadings.[2] A claim for relief "may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984) (citing *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 526 (S.D.N.Y.1977); *see Sansom Comm. v. Lynn,* 366 F.Supp. 1271, 1278 (E.D.Pa.1973); *Chambliss v. Coca–*

*Cola Bottling Co.,* 274 F.Supp. 401, 409 (E.D.Tenn.1967), *aff'd on other grounds,* 414 F.2d 256 (6th Cir.1969), *cert. denied,* 397 U.S. 916, 90 S.Ct. 921, 25 L.Ed.2d 97 (1970)), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). A Rule 12(b)(6) motion is available to any party wishing to challenge the formal sufficiency of a claim whether it is made in a complaint, counterclaim, cross-claim, or third party claim.[3]

Rule 8(a) supplements Rule 12(b)(6) by setting forth the requirements of a claim for relief: (1) a brief statement of the basis of the court's jurisdiction; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief;" and (3) a demand for judgment. Under the Federal Rules, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Nonetheless, the pleading must set forth enough information to suggest that relief would be based on some recognized legal theory. "The District Court has no obligation to create, unaided by the plaintiff, new legal theories to support a complaint." *District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1081–82 (D.C.Cir.1984).[4] "In practice 'a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory.'" *Car Carriers,* 745 F.2d at 1106 (quoting *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 654 (7th Cir.1984) (Posner, J.) (quoting *French Quarter Apartments Ltd. v. Georgia–Pacific Corp. (In re Plywood Antitrust Litigation),* 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed,* 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983))).

---

**2.** Furthermore, all material facts alleged in a claim for relief are taken as admitted for the purposes of this motion. *See George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir.1977); *Bankers Trust Co. v. Feldesman,* 676 F.Supp. 496, 498–99 (S.D.N.Y.1987).

**3.** *See* 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1356, at 590 (1969).

**4.** *See Furlong v. Long Island College Hosp.,* 710 F.2d 922, 927 (2d Cir.1983).

Having set forth the standards for evaluating motions under Rule 12(b)(6), the Court now addresses the sufficiency of Medtronic's counterclaims.

### A. *Medtronic's Antitrust Claim*

Medtronic's first counterclaim is based on alleged violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1982). Medtronic seems to be alleging that Telectronics engaged in a conspiracy to restrain trade, attempted to monopolize, conspired to monopolize, and did monopolize the market for certain kinds of pacemakers. Defendant's First Amended and Supplemental Answer to Plaintiff's First Amended and Supplemental Complaint ¶¶ 83, 88 (hereinafter "Answer"). Each of these allegations suggests a distinct claim under the Sherman Act.

### *Section One*

**Restraint of Trade**

Section 1 of the Sherman Act, 15 U.S.C. § 1 (1982), makes "[e]very contract ... or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, ... illegal." "The gravamen of a charge under [section 1] is conduct in restraint of trade; no fundamental alteration of market structure is necessary." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 272 (2d Cir.1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). There are several elements to a section 1 claim. There must be (1) concerted action, (2) by two or more persons, and (3) the concerted action must unreasonably restrain interstate or foreign trade or commerce.[5] Although Medtronic has alleged that "Telectronics, Inc. and Telectronics U.S.A., Inc. have conspired and contracted with ELA SA and ELA U.S.A.

and Nucleus Ltd., Synthelabo S.A. and Nestle Alimenta and Siemens–Elema, Inc. to restrain trade," Answer ¶ 83, it has not specified in this counterclaim what concerted actions these parties took to further their goal.[6] "Although the Federal Rules permit statement of ultimate facts, a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal." *Heart Disease Research Found. v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir.1972).[7] A generous reading of Medtronic's pleading indicates that the "anticompetitive" concerted action Telectronics allegedly engaged in was a conspiracy to violate the Medicare laws. Answer ¶¶ 63, 89. This allegation by itself is insufficient to state a claim under section 1 of the Sherman Act. "The cornerstone of [antitrust] law is competition. Congress'[s] intent in passing the Sherman Act was not to subject all business and commercial torts to the scrutiny of federal [antitrust] law." *Falstaff Brewing Co. v. Stroh Brewery Co.*, 628 F.Supp. 822, 826 (N.D.Cal.1986). Moreover, Medtronic has failed to plead antitrust injury, another necessary element of an antitrust claim.[8] Thus this claim must be dismissed under Rule 12(b)(6).

### *Section Two*

There are three types of civil actions which may be brought under section 2 of the Sherman Act, 15 U.S.C. § 2 (1982): (1) monopolization; (2) attempted monopolization; and (3) conspiring to monopolize. Medtronic appears to be trying to assert each of these claims.

**Monopolization**

To state properly a monopolization claim under section 2, the claimant must allege (1) that defendant has monopoly

---

**5.** *See Oreck Corp. v. Whirlpool Corp.*, 639 F.2d 75, 78 (2d Cir.1980), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981); *Frito–Lay, Inc. v. Bachman Co.*, 659 F.Supp. 1129, 1132 (S.D.N.Y.1986); 2 E. Kintner, Federal Antitrust Law § 9.1, at 5 (1980); L. Sullivan, Antitrust §§ 108–09, at 311–12 (1977).

**6.** This Court also assumes that the last five parties named by Medtronic are not owned by Telectronics.

**7.** *See Speed Auto Sales, Inc. v. American Motors Corp.*, 477 F.Supp. 1193, 1196–97 (E.D.N.Y. 1979); *Troyer v. Karcagi*, 476 F.Supp. 1142, 1153 (S.D.N.Y.1979).

**8.** *See infra* note 9. *See also* P. Areeda & H. Hovenkamp, Antitrust Law § 335.1a, at 256–61 (Supp.1987) (discussing antitrust injury).

power—the ability to control prices or exclude competition; and (2) that defendant acquired its monopoly power through conduct intended to obtain such power.[9]

■ Section 2 of the Sherman Act is "aimed ... at the acquisition or retention of effective market control." *United States v. Griffith*, 334 U.S. 100, 107, 68 S.Ct. 941, 945, 92 L.Ed. 1236 (1948). It is designed to prevent "a pernicious market structure in which the concentration of power saps the salubrious influence of competition." *Berkey Photo*, 603 F.2d at 272. Ordinarily, the court may infer the existence of monopoly power from a predominant share of the relevant market. *Grinnell*, 384 U.S. at 571, 86 S.Ct. at 1704. Here, although it did offer definitions of the relevant product and geographic markets and submarkets, Medtronic has alleged neither monopoly power, nor even significant market share on Telectronics' part. Instead, it simply avers that: "[t]he Telectronics[ ] entities have monopolized and continue to monopolize" the relevant markets. Answer ¶ 88. Such a statement is not a sufficient allegation of monopoly power to withstand a motion to dismiss. "A complaint cannot escape the charge that it is entirely conclusory in nature merely by quoting ... words from the statutes." *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972).

## Attempted Monopolization

■ "The essential elements of attempted monopolization under [section 2] are (1) a dangerous probability of success in monopolizing a given product market and (2) a specific intent to destroy competition or control prices in the market." *Levitch v. Columbia Broadcasting Sys.*, 495 F.Supp. 649, 668 (S.D.N.Y.1980), *aff'd*, 697 F.2d 495 (2d Cir.1983).[10] Medtronic seems to have alleged specific intent when it said: "Telectronics, Inc. and Telectronics U.S.A., Inc. have had, as their sole purpose, the suppression and elimination of competition." Answer ¶ 86. However, the counterclaim does not contain any allegations of a dangerous probability of success, and thus has failed to state a necessary element of the ·claim.

## Conspiracy to Monopolize

■ To state a claim for conspiracy to monopolize, a claimant must allege (1) concerted action; (2) specific intent to achieve the unlawful result of monopoly; and (3) the commission of at least one act in furtherance of the conspiracy.[11] "It need not be shown that monopoly power has been attained, nor that if the conspirators continued in their course unmolested they would have attained it, but only that obtaining such power is the purpose which motivates the conspiracy." L. Sullivan, *supra*, § 49, at 132–33. Medtronic's only allegations of concerted action state that Te-

9. *See United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); L. Sullivan, *supra*, § 7, at 29–30.

In addition, the claimant must allege antitrust injury—that is an injury of the type the antitrust laws were designed to protect against—as part of any claim under the antitrust laws. *See Car Carriers*, 745 F.2d at 1107; *Hunt–Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919 (9th Cir. 1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). Medtronic has vaguely stated that it has suffered "loss of profits and business opportunities, the amount of which is not yet ascertained, but which is substantial." Answer ¶ 92. By making this averment, Medtronic has stated an injury to itself, but not to competition in the relevant market. "Injury to one competitor is not a 'restraint of trade.' To state a claim under ... the Sherman Act, a claimant must allege injury to competition in general." *Frito–Lay*, 659 F.Supp. at 1133 (citing *BusTop Shelters, Inc. v. Convenience & Safety*

*Corp.*, 521 F.Supp. 989 (S.D.N.Y.1981)). *See also Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) ("The antitrust laws ... were enacted for 'the protection of *competition*, not *competitors.*'") (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962) (emphasis in original); *Kelco Disposal, Inc. v. Browning–Ferris Indus.*, 845 F.2d 404, 405, 411 (2d Cir.1988) ("a plaintiff must prove behavior that injures competition, as distinct from a competitor").

10. *See Times–Picayune Publishing Co. v. United States*, 345 U.S. 594, 626, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*, 614 F.2d 832, 841 (2d Cir.1980); *Frito–Lay*, 659 F.Supp. at 1129; L. Sullivan, *supra*, § 50, at 134.

11. *See* L. Sullivan, *supra*, § 49 at 132–33.

lectronics "and others have combined and conspired and acted individually to bribe physicians to use Telectronics' products and to exclude competition in the relevant markets and submarkets." Answer ¶¶ 88–89.[12] "Although the Federal Rules permit statement of ultimate facts, a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal." *Heart Disease Research,* 463 F.2d at 100. Medtronic has not named the "others" who allegedly conspired with Telectronics U.S.A. and Telectronics, Inc. and these two entities cannot conspire with each other. "[T]he joint activities of a parent company and its wholly owned subsidiary cannot constitute a combination or conspiracy in violation of ... the Sherman Act." *Shaw v. Rolex Watch, U.S.A., Inc.,* 673 F.Supp. 674, 677, 1987–2 Trade Cas. (CCH) ¶ 67,787, at 59,238, 59,-240 (S.D.N.Y.1987) (citing *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 776, 104 S.Ct. 2731, 2744, 81 L.Ed. 2d 628 (1984)).

Because Medtronic has failed to state adequately any claim under sections one and two of the Sherman Act, Telectronics' motion to dismiss defendant's first counterclaim pursuant to Rule 12(b)(6) is granted. Despite the fact that Medtronic was aware of a defect in its pleading, and did nothing to correct it for over one year, defendant may file an amended pleading within 20 days as this Court is disinclined to preclude a party's opportunity to prosecute a potentially legitimate claim merely because of its counsel's neglect or omission.[13]

### B. *Medtronic's RICO Claim*

As its third counterclaim, Medtronic has attempted to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Pub.L. No. 91–452, 84 Stat. 941 (codified as amended at 18 U.S.C. §§ 1961–1968 (1982 & Supp. IV 1986)). Medtronic's statement of this claim mainly consists of reiteration of the statute and incorporation by reference of an Information and Prosecutor's Statement prepared by the U.S. Attorney for the District of Colorado concerning Telectronics' violation of the Medicare laws, particularly 42 U.S.C. § 1395nn (1982 & Supp. III 1985).[14] Answer ¶ 111. Medtronic has made additional allegations in its brief in opposition to the 12(b)(6) motion, "but a party is not entitled to amend [its] pleading through statements in [its] brief." *Jacobson,* 445 F.Supp. at 526 (citing *Chambliss,* 274 F.Supp. at 409).

 Like the antitrust laws, RICO is enforced through both criminal and civil proceedings; section 1964 contains the provisions creating the civil remedies.

> (c) Any person *injured in his business or property by reason of a violation of section 1962* of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c) (emphasis added). To state a civil RICO claim, a claimant must allege both a violation of section 1962 and injury to its business or property within the

---

**12.** Apparently Medtronic may have intended to make allegations of additional conspiratorial or monopolistic conduct, but failed to do so because of a clerical error. Although Medtronic stated that there was an "obvious clerical omission of the specific acts of monopolization in paragraph 88 [and] Medtronic will seek leave ... to correct its Complaint," Medtronic's Brief in Response and in Opposition to Telectronics' Motion Under Fed.R.Civ.P. 12(b)(6) and 12(f) to Dismiss Medtronic's First and Third Counterclaims and to Strike Medtronic's Ninth, Twelfth, and Fourteenth Affirmative Defenses (hereinafter "Medtronic's Rule 12 Brief"), it has not taken any action to correct its pleading in the year since it made that statement.

**13.** This is particularly so when the plaintiff is acting as a "private attorney general," and enforcing an important public policy as is the case in private antitrust suits. *See generally* Klingsberg, Balancing the Benefits and Detriments of Private Antitrust Enforcement: Detrebling, Antitrust Injury, Standing, and Other Proposed Solutions, 9 Cardozo L. Rev. 1215, 1220 (1988) (discussing the merits of private antitrust enforcement).

**14.** Medtronic also incorporated by reference a Statement by the Defendant in Advance of a Plea of Guilty and a Plea Agreement concerning these charges, but these items do not contain information which would clarify Medtronic's claim.

meaning of section 1964.[15] The injury requirement of section 1964 is comprised of (1) injury to the plaintiff, (2) causation of that injury, and (3) the conduct that caused the injury. The prohibited conduct and the plaintiff's proprietary injury must be causally linked. It is insufficient for a plaintiff to prove only a violation by the defendants and a proprietary injury; a plaintiff must prove that the defendant's violation caused his injury.[16]

■ Even when Medtronic's claim is examined under the generous standards of Rule 12 and Rule 8, rather than the more stringent requirements of Rule 9(b),[17] it is stated inadequately. Medtronic has done no more than paraphrase the statute in its pleading; its entire statement of injury is: "Medtronic has been, and continues to be, injured in its business or property by reason of each of the foregoing violations of 18 U.S.C. § 1962 and is entitled to appropriate relief pursuant to 18 U.S.C § 1964." Answer ¶ 116. Medtronic's prayer for relief, which requests $1,000,000 (trebled), attorney's fees, interest and costs, provides no additional clues as to how Medtronic was injured. Even if this Court could divine how Medtronic was injured, the claim would still be inadequate because it fails to address causation. The prohibited conduct must cause the plaintiff's proprietary injury. It is insufficient for a plaintiff to plead simply a violation by the defendants and an injury to its property; it must plead that it was injured by the violation.[18]

Because Medtronic has failed to state adequately a claim under 18 U.S.C. § 1964, Telectronics' motion to dismiss defendant's third counterclaim pursuant to Rule 12(b)(6) is granted. Medtronic may file an amended pleading within 20 days.

## III. TELECTRONICS' MOTIONS TO STRIKE

■ Rule 12(f) authorizes courts to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In the instant case Telectronics has made a motion to strike Medtronic's ninth, twelfth, and fourteenth affirmative defenses. Motions to strike an affirmative defense are not favored, and will not be granted routinely.[19] Rule 12(f) motions will, however,

---

15. Because Medtronic has failed to allege an injury, this Court need not reach the issue of whether it has properly pled a violation of § 1962. This does not mean to imply that in its current state the part of Medtronic's pleading that pertains to § 1962 would withstand a motion to dismiss; in fact it seems unlikely that it would.

16. See Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983) (to state a civil RICO claim plaintiff must allege violation of substantive RICO, damage, and causation), cert. denied, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); Cahill v. Arthur Andersen & Co., 659 F.Supp. 1115, 1124–25 (S.D.N.Y.1986) (same), aff'd, 822 F.2d 14 (2d Cir.1987).

Only the directly injured party has standing to sue in a civil RICO case. Rand v. Anaconda–Ericsson, Inc., 794 F.2d 843, 849 (2d Cir.1986), cert. denied, — U.S. —, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); Carter v. Berger, 777 F.2d 1173, 1174–76 (7th Cir.1985) (Easterbrook, J.).

[C]oncentrating the entire right to recover in the hands of the directly injured party promotes deterrence. RICO was designed to make life hard for repeat violators of the criminal law....

[I]ncreased deterrence ... is produced by granting the full recovery to a single person. The person with the best opportunity to un-

cover a violation is the one directly injured....

Id. at 1176.

17. Rule 9(b) applies to at least the predicate act elements of a civil RICO claim if they are fraud-based. See Cruse v. Equitable Securities, 678 F.Supp. 1023, 1033 (S.D.N.Y.1987); Greenfield v. Professional Care, Inc., 677 F.Supp. 110, 115–16 (E.D.N.Y.1987); Connors v. Lexington Ins. Co., 666 F.Supp. 434, 450 (E.D.N.Y.1987); Beck v. Manufacturers Hanover Trust Co., 645 F.Supp. 675, 680–82 (S.D.N.Y.1986), aff'd, 820 F.2d 46 (2d Cir.1987), cert. denied, — U.S. —, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); Gregoris Motors v. Nissan Motor Corp., 630 F.Supp. 902, 912 (E.D.N.Y.1986).

18. See Moss, 719 F.2d at 17.

19. See Index Fund, Inc. v. Hagopian, 107 F.R.D. 95, 100 (S.D.N.Y.1985). "In deciding a motion to strike, a court will not consider matters outside the pleadings, and well-pleaded facts will be accepted as true. If the defense appears ... valid on the basis of the pleading, then the motion ... will be denied even though some defenses ... may not be supported by the facts." Id. (citations omitted). See also Note, The Motion to Strike An Insufficient Defense—Rule 12(f)

be granted when warranted.[20]

 Medtronic's ninth affirmative defense, Answer ¶ 63, asserts that Telectronics' claims are barred by the unclean hands doctrine. Medtronic has not indicated in this paragraph which of Telectronics' claims it believes are barred by this defense. In its twelfth affirmative defense, however, it repeats its assertion of the unclean hands defense with regard to the antitrust claims in particular. While the unclean hands defense is available in patent cases,[21] it is not applicable in the antitrust context; "a plaintiff's own anticompetitive conduct generally cannot be raised as a defense to liability in an antitrust action." *United States Football League v. National Football League,* 842 F.2d 1335, 1369 (2d Cir.1988).[22] Hence, to the extent that the unclean hands defense refers to Telectronics' antitrust claims, it must be stricken from the answer. Insofar as the ninth affirmative defense refers to Telectronics' patent claim, it may stand.

The entire text of Medtronic's twelfth affirmative defense is: "Telectronics' antitrust claims are barred by the judicial doctrines of laches, fraud, estoppel, and unclean hands." Answer ¶ 66. Medtronic has given absolutely no indication as to how these defenses apply to Telectronics' antitrust claims.

 The doctrine of laches does not normally apply to antitrust claims, although it can be applied to equitable claims made under section 16 of the Clayton Act.[23] In this case, Telectronics has only requested money damages (which are provided for by statute) as a remedy under the antitrust laws,[24] therefore this Court sees no reason why the doctrine of laches should apply in this case, and this affirmative defense must be stricken.

 Pleading fraud without more as an affirmative defense does not meet the particularity requirements of Rule 9(b).[25] By itself, the word "fraud" provides neither the Court nor the opposing party with sufficient notice of the claim raised by this defense. Likewise, the word "estoppel" without more is not a sufficient statement of a defense. Moreover, even if Medtronic had adequately stated the estoppel defense, "it is highly unlikely that estoppel can be readily allowed to defeat antitrust claims." *Bernstein v. Universal Pictures, Inc.,* 517 F.2d 976, 981 (2d Cir.1975). Because Medtronic has totally failed to state these defenses in a proper manner, they too should be stricken.

 In its fourteenth affirmative defense, Answer ¶¶ 68–80, Medtronic seems to be attempting to make a claim of failure to join an indispensable party. Medtronic's elaboration indicates that, if Telectronics Pty. Ltd. is indispensable to any claim in this action, it is indispensable to Medtronic's counterclaims, not Telectronics'

*of the Federal Rules of Civil Procedure,* 11 Rut.–Cam.L.J. 441, 441 (1980) ("Generally, ... redundant, immaterial, impertinent or scandalous pleadings do not prejudice any of the parties. Motions to strike these nonprejudicial pleadings do not serve the interests of judicial efficiency and economy since they only postpone the date of trial on the merits.").

**20.** *See, e.g., Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1057 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

**21.** *See, e.g., Timely Products Corp. v. Arron,* 523 F.2d 288, 298 (2d Cir.1975); *A.H. Emery Co. v. Marcan Products Corp.,* 389 F.2d 11, 17–18 (2d Cir.), *cert. denied,* 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968).

**22.** *See also Kiefer–Stewart Co. v. Joseph E. Seagram & Sons, Inc.,* 340 U.S. 211, 214, 71 S.Ct. 259, 261, 95 L.Ed. 219 (1951) (plaintiff's infrac-

tions of the antitrust laws could not legalize defendants' unlawful combination nor immunize them from liability).

**23.** *See Argus Inc. v. Eastman Kodak Co.,* 552 F.Supp. 589, 599–600 (S.D.N.Y.1982); *Russell v. Todd,* 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754 (1940); cf. *Kaiser,* 677 F.2d at 1057; C. Hills, *Antitrust Advisor* § 11.43, at 717–18 (rev. 2d ed. 1985).

**24.** Telectronics is, however, seeking equitable relief—i.e. declaratory judgment of non-infringement—for its patent claim.

**25.** Even if Rule 9(b) did not apply to assertions of fraud, a mere statement that *a claim is* barred by fraud is not a sufficient statement of an affirmative defense.

claims.[26] "The infringement by [Telectronics] and Telectronics Pty. Ltd. of [Medtronic's] patents-in-suit have deprived [Medtronic] of sales of its cardiac pacers, which it would otherwise have made, and have in other respects injured [Medtronic] and will cause [Medtronic] added injury and damage ... unless [Telectronics] and Telectronics Pty. Ltd. are enjoined from infringing [Medtronic's patents]." Answer ¶ 76. Rule 8 requires that courts read pleadings quite generously. Because it is plausible that Medtronic's claim is a compulsory counterclaim[27] and that Telectronics Pty. Ltd. is an indispensable party to that counterclaim,[28] the motion to strike the fourteenth affirmative defense must be denied.

## IV. MEDTRONIC'S MOTION FOR SUMMARY JUDGMENT ON TELECTRONICS' CLAYTON ACT § 7 CLAIM

Medtronic has moved for judgment on the pleadings or summary judgment with respect to Telectronics' claim under section 7 of the Clayton Act, ch. 323, § 7, 38 Stat. 731 (1914) (current version at 15 U.S.C. § 18 (1982 & Supp. IV 1986)). Rule 12(c) allows the court to treat a motion for judgment on the pleadings as a motion for summary judgment when it considers materials extrinsic to the pleadings. Because both parties have presented materials outside the pleadings and were on notice, this Court will treat this motion as a motion for summary judgment under Rule 56.

Summary judgment is appropriate when " 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).[29] "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). In evaluating a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Liberty Lobby*, 477 U.S. at 247–49, 106 S.Ct. at 2510–11; *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985)), *cert. denied*, — U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).[30]

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact." *Celotex*, 477

---

**26.** Thus its designation as an affirmative defense is erroneous.

**27.** Medtronic's counterclaim would only be compulsory under Rule 13(a) if it "require[s] for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

**28.** Rule 19 only mandates joinder of parties who are "subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action." Fed.R. Civ.P. 19(a). Since Telectronics Pty. Ltd. is an Australian corporation, it is quite possible that it falls outside the definition of an indispensable party under Rule 19. (Medtronic has unsuccessfully attempted to serve process on Telectronics Pty. Ltd. Answer ¶ 69.) For a discussion of the ability of American courts to exercise subject matter jurisdiction in antitrust cases involving foreign parties, *see* Note, *Economic Rationality and the Extraterritorial Application of United States Law in Private Antitrust Litigation*, 9 Cardozo L.Rev. 1401, 1404–10 (1988).

**29.** *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting System*, 844 F.2d 955, 959 (2d Cir.1988).

**30.** *See also Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975); *Cali v. Eastern Airlines, Inc.*, 442 F.2d 65, 71 (2d Cir.1971).

U.S. at 323, 106 S.Ct. at 2553. Rule 56 does not require that the moving party support its motion with affidavits or other similar materials which negate the opponent's claim; rather, it can meet its burden by showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

Once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514 (citing Fed.R. Civ.P. 56(e)). Because the District Court must determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," *id.* at 250, 106 S.Ct. at 2511,—the nonmoving party must produce, at the summary judgment stage, "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511 "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted).

Medtronic's motion for summary judgment is mainly founded on the claim that Telectronics' Clayton Act section 7 claim is barred by the statute of limitations contained in 15 U.S.C. § 15b. Relying heavily on a case decided in 1969 in the District of Minnesota which held that a private litigant does not have standing to bring an action under section 7 of the Clayton Act, *Dairy Foods, Inc. v. Farmers Co-operative*

*Creamery,* 298 F.Supp. 774 (D.Minn.1969), Medtronic argues that Telectronics' cause of action arose at the time the patents in question were acquired.[31] Since the last patent in dispute was acquired on December 27, 1979, and the acquisition was made public on January 7, 1980, Medtronic contends that the limitations period ended on January 7, 1984 at the latest. This Court finds this argument unconvincing.[32]

■ Statutes of limitation are not designed to trigger a game which, if won by the defendant, allows a party to circumvent the law by arguing that a cause of action arose earlier than it actually did. Rather,

[s]tatutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that right to be free of stale claims comes to prevail over the right to prosecute them.

*Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). While the statute of limitations for antitrust claims is uniform, the event which gives rise to a claim under those laws is not. "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971).[33] In the antitrust context, "each

---

**31.** Medtronic's reliance is based on dicta in the opinion stating that if the court had reached the opposite conclusion (i.e. that a private action could be brought under § 7), "it would seem that the cause of action would arise at the time of the merger or acquisition." *Dairy Foods,* 298 F.Supp. at 777. *Dairy Foods* was not decided on statute of limitations grounds, and even if it had been, the point in time at which a cause of action arises under the antitrust laws varies greatly from case to case.

**32.** Similarly, Honorable Kenneth L. Ryskamp, District Judge of the Southern District of Flor-

ida, found this argument unconvincing when Medtronic made an almost identical motion in a case quite similar to the one before this Court. *Cordis Corp. v. Medtronic, Inc.,* No. 84–1239–CIV (S.D.Fla. Nov. 20, 1986).

**33.** *Cf. Twin City Sportservice, Inc. v. Charles O. Finley & Co.,* 512 F.2d 1264, 1270 (9th Cir.1975), *cert. denied,* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982); *Akron Presform Mold Co. v. McNeil Corp.,* 496 F.2d 230, 233 (6th Cir.), *cert. denied,* 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974); C. Hills, *supra* note 23, § 11.43, at 715; L. Sullivan, *supra,* at 775–76.

time a plaintiff is injured by an act of the defendants a cause of action accrues to him [and] the statute of limitations runs from the commission of the act." *Id.* "Because antitrust injuries vary, there is no simple rule for determining when an antitrust cause of action arises." C. Hills, *supra* note 23, § 11.43, at 715.

█ In this case it is far from clear which act triggered Telectronics' claim under section 7; the acquisition of the disputed patents is but one possibility. It is equally possible that it was not until Medtronic asserted the patents against Telectronics in the ITC case that Telectronics was adversely impacted by Medtronic's conduct. Because Telectronics would not be affected by Medtronic's acquisition of the patents until Medtronic attempted to assert them against Telectronics, its injury would probably be too speculative to confer standing until that time.[34]

Summary judgment is only appropriate when " 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.' " *Celotex,* 106 S.Ct. at 2552 (quoting Fed.R. Civ.P. 56(c)). The accrual date for this cause of action is a factual dispute; thus summary judgment would be inappropriate at this juncture, and this issue is best reserved for resolution at trial.

█ Medtronic's second justification for its motion for summary judgment is based on its contention that the Greatbatch ('707), Funke ('355), and Adams ('116) patents were acquired from individual inventors and therefore their acquisition is not subject to section 7.[35] Until its amendment in 1980, section 7 of the Clayton Act did not apply to assets[36] acquired from "individuals, partnerships, unincorporated associations or other unincorporated business entities." H.R.Rep. No. 871, 96th Cong., 2d Sess. 2, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2732, 2732. Section 7 applies to acquisitions from noncorporate entities (including individuals) made after September 12, 1980. 15 U.S.C. § 18 (1982).

The Greatbatch and Adams patents were both acquired prior to September 12, 1980. While it appears undisputed that the Adams patent was acquired from its individual inventor, there is a dispute as to the prior ownership of the Greatbatch patent. It seems that Greatbatch was employed by Wilson Greatbatch Ltd. at the time of invention, thus the patent may have been owned by the company. The Funke patent may have been partially owned by, and thus acquired from, a corporation—Biotronik, Inc; furthermore it was acquired after the 1980 amendment became effective. Hence, summary judgment in favor of Medtronic is appropriate in regard to the Adams patent, but inappropriate as to the Greatbatch, Funke, and Berkovits patents.

## V. TELECTRONICS' MOTION FOR RULE 11 SANCTIONS

█ Telectronics has brought a motion for Rule 11 sanctions in response to Medtronic's motion for summary judgment on

---

**34.** The discussion in *Zenith* lends support to the argument that the cause of action did not arise until commencement of the ITC suit:

[I]f a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date.... [E]ven if injury and a cause of action have accrued as of a certain date, future damages that might arise from the conduct sued on are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable.

In antitrust and treble-damage actions, refusal to award future profits as too speculative is equivalent to holding that no cause of action has yet accrued for any but those damages already suffered.... [T]he cause of action for future damages, if they ever occur, will accrue only on the date they are suffered....

Otherwise future damages that could not be proved within four years of the conduct from which they flowed would be forever incapable of recovery, contrary to ... congressional purpose[s].

*Zenith,* 401 U.S. at 339–40, 91 S.Ct. at 806–07 (citations omitted).

**35.** There is no doubt that Medtronic acquired the '242 patent from a corporation.

**36.** Patent acquisitions are within the scope of the antitrust laws. *SCM Corp. v. Xerox Corp.,* 645 F.2d 1195, 1205 (2d Cir.1981).

the Clayton Act section 7 claim. Shortly before Medtronic filed this motion in this Court, it received an unfavorable decision on a virtually identical motion in the *Cordis* case in the Southern District of Florida. Medtronic should have brought this decision to the attention of this Court and did not do so.[37] Decisions in the district court in Florida are not controlling in this Court, so Medtronic's behavior was not a violation of the letter of the Code of Professional Responsibility, but it is a clear violation of its spirit. Repetition of such dubious behavior is likely to result in the imposition of sanctions by this Court. Nevertheless, because it is not " '*patently clear* that [Medtronic's motion] had *absolutely no chance* of success,' " *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1006 (2d Cir.1988) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985)) (emphasis added), this Court will refrain from imposing Rule 11 sanctions at this time.

## VI. TELECTRONICS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE '242 LICENSE ISSUE

The final motion before this Court is Telectronics' motion for partial summary judgment that the defense of a license with respect to U.S. Patent No. 3,595,242 (the " '242" patent) is res judicata. The existence of a license was considered and decided by the International Trade Commission in *In re Certain Cardiac Pacemakers & Components Thereof*, No. 337–TA–162, Order No. 52, (U.S.I.T.C.1984). The issue currently before the Court is whether that ITC decision should be accorded preclusive effect.

"The doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent

decisions, encourage reliance on adjudication.' " *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 732 (Fed.Cir.1987) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)), *cert. denied*, —— U.S. ——, 108 S.Ct. 705, 98 L.Ed.2d 656 (1988). Generally, claim preclusion "prevents the litigation of any ground that *could have* been advanced in the earlier suit in support of the claim ... made there...." *USM Corp. v. SPS Technologies, Inc.*, 694 F.2d 505, 508 (7th Cir. 1982) (emphasis added), *cert. denied*, 462 U.S. 1107, 103 S.Ct. 2455, 77 L.Ed.2d 1334 (1983). Issue preclusion, however, operates only to preclude relitigation of issues actually litigated in a previous action.[38]

[C]ollateral estoppel is appropriate only if: (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action.

Collateral estoppel ... precludes a [party] 'from asserting a claim that the [party] had previously litigated and lost....'

*A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 702 (Fed.Cir.1983) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979)) (footnote omitted), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984).

The ITC action was initiated by Medtronic in August 1983. There Medtronic sought relief under section 337 of the Tariff Act of 1930, ch. 497, tit. III, § 337, 46 Stat. 703 (1930) (current version at 19 U.S. C. § 1337 (1982 & Supp. IV 1986)). The ITC, an administrative agency, has jurisdiction to determine whether the defendant in an action before it has engaged in "[u]nfair methods of competition and unfair acts in

---

37. *Cf.* Model Code of Professional Responsibility DR 7–106(B) (1970) ("In presenting a matter to a tribunal, a lawyer shall disclose: Legal authority in the controlling jurisdiction known to him to be directly adverse to the position of his client...."); Model Code of Professional Responsibility EC–7–23 (1970). *See generally,*

Hochberger, *Ethics Opinion Sets Guideline for Disclosing Adverse Rulings*, N.Y.L.J., Dec. 18, 1980, at 1, col. 2.

38. *See generally Young Engineers, Inc. v. USITC*, 721 F.2d 1305, 1314–15 (Fed.Cir.1983) (contrasting issue preclusion and claim preclusion).

the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect ... of which is to destroy or substantially injure an industry ... in the United States." 19 U.S.C. § 1337(a).[39]

▮▮▮▮ Patent infringement and importation of products manufactured by unauthorized use of a patented process or component parts are unfair acts or methods of competition under section 337. Thus defenses to such charges include noninfringement,[40] invalidity, and unenforceability of the patent.[41] Because the federal courts have exclusive jurisdiction over patent claims, 28 U.S.C. § 1338(a) (1982), the ITC may consider issues of patent *validity* only insofar as they impact its decision on unfair competition claims.[42] This does not mean, however, that the federal courts have exclusive jurisdiction over all ques-

tions which in some way concern a patent.[43] Of concern in this motion is the effect of the ITC's determination as regards the existence of a license under a patent; this determination was not one of the validity of a patent, but of the existence of a contract. Tribunals other than the federal courts have the authority to decide matters involving contracts relating to patents.[44]

▮▮▮ Because the ITC decision was on a matter within its jurisdiction (the existence of a license is a defense to a claim of unfair competition), there is no jurisdiction-based reason why the ITC determination should not be accorded issue-preclusive effect.[45] "The jurisdictional bar to *res judicata* treatment of ITC patent validity determinations simply does not apply to other decisions by the ITC." *Union Mfg.*, 763 F.2d at 45. Moreover, there is no reason why

39. For further discussion of the ITC's jurisdiction see Kaye, Lupo, & Lipnian, The Jurisdictional Paradigm Between the United States International Trade Commission and the Federal District Courts, 42 J. Pat. Off. Soc'y 118 (1982).

40. Unlike invalidity and unenforceability, noninfringement is not a defense based on the validity of a patent. Rather, it is a defense based on a contractual right to use the patent, or on defendant's lack of use of the patent.

41. *See Massachusetts Inst. of Technology v. AB Fortia,* 774 F.2d 1104, 1108 (Fed.Cir.1985).

42. *See* S.Rep. No. 93–1298, *reprinted in,* 1974 U.S.Code Cong. & Admin.News 7186, 7329. "Patent validity determinations of the ITC are properly not accorded *res judicata* effect because the ITC has no jurisdiction to determine patent validity except to the limited extent necessary to decide a case otherwise properly before it." *Union Mfg. Co. v. Han Baek Trading Co.,* 763 F.2d 42, 45 (2d Cir.1985).

"In short, the Congress has created two separate jurisdictions: One with jurisdiction over 'unfair acts' in connection with the importation of articles from abroad (the Commission), and the other with jurisdiction over the validity of domestic patents (the district court)." *Ashlow Ltd. v. Morgan Constr. Co.,* 672 F.2d 371, 375 (4th Cir.1982).

43. *See New Marshall Engine Co. v. Marshall Engine Co.,* 223 U.S. 473, 478, 32 S.Ct. 238, 239, 56 L.Ed. 513 (1912).

44. *See New Marshall,* 223 U.S. at 478, 32 S.Ct. at 239. The heavy reliance Medtronic placed on *Tandon Corp. v. USITC,* 831 F.2d 1017 (Fed.Cir. 1987), to counter this point is misplaced. *Tan-*

don dealt with a decision of noninfringement based on technological considerations. Moreover, the *Tandon* Court noted that "[i]t was the intent of Congress that greater weight and finality be accorded to the Commission's findings as compared with those of a trial court." *Id.* at 1019. Hence it hardly seems that the Federal Circuit intended to imply that ITC decisions could never be accorded *res judicata* effect.

45. Although Medtronic claims that the ITC eventually dismissed the case on jurisdictional grounds, it has presented no evidence to substantiate that claim. As the nonmoving party in this motion, Medtronic must present evidence of this assertion if it is to demonstrate that there is a genuine issue of fact present. *Cf. Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514. In fact, the Federal Circuit, when rendering a decision on appeal of this court's denial of Medtronic's motion to disqualify counsel, recognized the existence of Telectronics' license and in no way indicated that this determination was in doubt in any way. *See Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 836 F.2d 1332, 1334, 1335 (Fed. Cir.1988) ("Medtronic is the current owner of the '242 patent; Telectronics is a current licensee.").

Medtronic also claims that Telectronics has already lost on a similar contention of *res judicata* when its motion to disqualify counsel was decided. Medtronic misreads both the statements of this Court and those of the Federal Circuit. This Court did not reach the issue of *res judicata* in the decision on that motion. *See Telectronics Proprietary Ltd. v. Medtronic, Inc.,* —— F.Supp. ——, 83 Civ. 8568 (S.D.N.Y. Jan. 7, 1987); *Telectronics,* 836 F.2d at 1334.

the ITC's determination should not be accorded issue-preclusive effect simply because it was made by an administrative agency. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

Medtronic also contends, again without offering any evidence to controvert what seems quite apparent, that there was no final judgment in this matter. The issue of a license under the '242 patent was decided by the ITC on a motion for summary determination. The ITC's adjudicative procedures are set forth in 19 C.F.R. §§ 210.1–210.71 (1987); generally, they bear a striking resemblance to the Federal Rules of Civil Procedure. Summary determination is virtually identical to summary judgment in the federal courts. "Any party may move with any necessary supporting affidavits for a summary determination in his favor upon all or any part of the issues to be determined in the investigation." 19 C.F.R. § 210.50(a). "When a motion for summary determination is made and supported as provided in this rule, a party opposing the motion may not rest upon mere allegations or denials in his pleading; his response ... must set forth specific facts showing that there is a genuine issue of fact for hearing." 19 C.F.R. § 210.50(c).[46] Medtronic had ample opportunity to substantiate its position during this proceeding and did not succeed in doing so.[47] The fact that Medtronic later voluntarily dismissed its other claims in order to bring an appeal which it later aborted, is no reason to consider the ITC's decision anything less than final.

In ITC proceedings, an administrative law judge ("ALJ") makes an initial determination[48] which can, but need not, be reviewed by the full Commission. If the Commission does not order review of the initial determination within thirty days, it becomes the final determination of the Commission.[49] The President then has the opportunity to disapprove the decision for policy reasons. In this case, the Commission denied review of the ALJ's determination, and it became a final determination.[50]

Because Medtronic has failed to demonstrate that there is any genuine issue of material fact as to the issue-preclusive effect of the ITC's finding of a license under the '242 patent, Medtronic is collaterally estopped from relitigating that issue.

## VII. CONCLUSION AND SUMMARY

For the foregoing reasons:

1. Telectronics' motion under Rule 12(b)(6) to dismiss Medtronic's first counterclaim (Sherman Act §§ 1, 2) is granted and Medtronic is granted leave to replead within 20 days;

2. Telectronics' motion under Rule 12(b)(6) to dismiss Medtronic's third counterclaim (RICO) is granted and Medtronic is granted leave to replead within 20 days;

3. Telectronics' motion under Rule 12(f) to strike Medtronic's ninth affirmative defense (unclean hands) is granted insofar as it refers to Telectronics' antitrust claims, and denied insofar as it refers to Telectronic's patent claim;

4. Telectronics' motion under Rule 12(f) to strike Medtronic's twelfth affirmative defense (laches, fraud, estoppel, and unclean hands) is granted;

5. Telectronics' motion under Rule 12(f) to strike Medtronic's fourteenth affirmative

46. *Compare* Fed.R.Civ.P. 56 (1982).

47. *See In re Certain Cardiac Pacemakers & Components Thereof,* No. 337–TA–162, Order No. 52, slip op. at 1–2 (U.S.I.T.C. May 24, 1984).

48. "An order of summary determination [constitutes] an initial determination of the administrative law judge...." 19 C.F.R. § 210.50(f).

49. *See* 19 C.F.R. § 210.53(h).

50. Final determinations by the ITC determination may be appealed to the Federal Circuit under 19 C.F.R. § 210.71.

defense (failure to join an indispensable party) is denied;

6. Medtronic's motion for summary judgment on Telectronics' Clayton Act § 7 claim is granted on the matter of the Adams ('116) patent, and denied as to the Greatbatch ('707), Funke ('355), and Berkovits ('242) patents;

7. Telectronics' motion for sanctions pursuant to Rule 11 is denied.

8. Telectronics' motion for partial summary judgment that the defense of a license under the '242 patent is res judicata or issue precluded is granted.

SO ORDERED.