**Angelo J. SOLIMINO, Plaintiff,**

v.

**ASTORIA FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.**

**No. 85 Civ. 0555.**

United States District Court, E.D. New York.

May 31, 1989.

---

Joseph J. Gentile, Long Island City, N.Y., for plaintiff.

Michael S. Cecere, Jackson, Lewis, Schnitzler & Krupman, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

In this action brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, defendant moves pursuant to Fed.R.Civ.P. 56(b) for summary judgment on the grounds that (1) the action is time-barred, and (2) plaintiff is administratively estopped from proving his case. For the reasons stated below, the court grants defendant's motion on the latter ground.

### FACTS

Plaintiff joined defendant Astoria Federal Savings & Loan as a teller in October 4, 1945. On March 5, 1982, he was terminated. By that time, he was 63 years old and had reached the position of Vice President of the Mortgage Origination Department.

Plaintiff filed a formal charge of age discrimination with the federal Equal Employment Opportunity Commission (EEOC) and the New York State Division of Human Rights (DHR) on March 18, 1982. DHR held an investigative hearing on November 29, 1982. DHR dismissed the complaint on January 25, 1983, and the State Human Rights Appeal Board affirmed on May 30, 1984.

On July 29, 1983, prior to the Appeal Board's affirmance, plaintiff brought an action in New York State Supreme Court for New York County, naming as defendants several officers and employees of the defendant, the defendant's law firm, and two employees of the DHR. Justice Dontzin construed the complaint as alleging causes of action for wrongful termination of employment, prima facie tort, perjury and conspiracy, and dismissed the entire complaint as against the non-DHR defendants, pursuant to N.Y.Civ.Prac.L. & R. § 3211(a)(7), for failure to state a cause of action. *Solimino v. Drewitz*, No. 22074/83

44

(Sup.Ct.N.Y.Co. April 16, 1984). Subsequently, Justice Myers dismissed the complaint as against the DHR defendants pursuant to N.Y.Civ.Prac.L. & R. § 3211(a)(7) for failure to state a cause of action. *Solimino v. Drewitz*, No. 22074/83 (Sup.Ct.N.Y.Co. May 10, 1984). The Appellate Division affirmed both rulings. *Solimino v. Drewitz*, 111 A.D.2d 602, 489 N.Y.S.2d 439 (1st Dep't 1985).

On February 21, 1985, plaintiff filed this action, alleging that defendant had begun to discriminate against him on the basis of age after he turned 56 by denying him salary increases and promotions and by promoting younger people over him, and that defendant had terminated him because of his age.

## DISCUSSION

## I. STATUTE OF LIMITATIONS

The ADEA's statute of limitations, 29 U.S.C. § 626(e)(1), incorporates by reference the statute of limitations contained in 29 U.S.C. § 255(a), which states in relevant part that an action is

> forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]

For the purposes of this motion only, defendant concedes the applicability of the three-year limitations period based on a "willful violation" of the ADEA.

█ Plaintiff claims that his cause of action accrued on the date he was terminated, March 5, 1982, so that his filing of the complaint on February 21, 1985 was timely. However, the case law uniformly rejects this contention. Rather, plaintiff's cause of action accrued on the date he was noti-

fied of his impending termination. *Russo v. Trifari, Krussman & Fishel, Inc.*, 837 F.2d 40, 42 (2d Cir.1988); *Shockley v. Vermont State Colleges*, 793 F.2d 478, 481 (2d Cir.1986); *Miller v. International Telephone & Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985); *Pfister v. Allied Corp.*, 539 F.Supp. 224 (S.D.N.Y. 1982); *E.E.O.C. v. Kimberly–Clark Corp.*, 531 F.Supp. 58 (N.D.Ga.1981).[1]

The parties agree that plaintiff was notified of his impending termination in a meeting with defendant's president, Henry Drewitz, which occurred sometime soon after a meeting of defendant's board of directors held on Wednesday, February 17, 1982.[2]

However, a factual dispute exists over whether plaintiff's meeting with Drewitz occurred on the Thursday or Friday after the board meeting (February 18 or 19, 1982), in which case the action is time-barred, or on the following Monday (February 22, 1982), in which case the action is timely-filed.

Defendant relies principally upon the Charge of Discrimination form which plaintiff filed with the EEOC and the New York State Division of Human Rights on March 18, 1982—no more than a month after the meeting with Drewitz. On that form, plaintiff put down February 18, 1982 as the "date most recent or continuing discrimination took place." Below that line of the form, in the narrative portion, plaintiff stated "I have been given a notice of termination on February 18, 1982[.]" The form was signed under penalty of perjury.

During the investigatory hearing before the State Division of Human Rights on November 29, 1982—over nine months after the Drewitz meeting—Drewitz testified that the meeting occurred on February 19,

**1.** The basis for the decisions cited on this point is to be found in two Supreme Court rulings: *Delaware State College v. Ricks*, 449 U.S. 250, 258–59, 101 S.Ct. 498, 504–05, 66 L.Ed.2d 431 (1980) (limitations period in suit under § 1981 and Title VII ran from date tenure decision was made and plaintiff was notified) and *Chardon v. Fernandez*, 454 U.S. 6, 7, 102 S.Ct. 28, 28, 70 L.Ed.2d 6 (1981) (per curiam) (limitations peri-

od in § 1983 suit ran from date plaintiffs received termination letters).

**2.** The date of the board meeting is undisputed. The minutes of the board meeting, dated 2/17/82, are annexed as Exhibit A to Affidavit of Plaintiff Angelo J. Solimino, In Opposition to Motion for Summary Judgment.

1982. Tr. 27–28. Solimino's testimony conflicted in several respects with Drewitz's, but did not contradict Drewitz's recollection regarding the date. *Id.*, 29–30. However, Solimino later referred to a meeting with Drewitz—apparently the same meeting—as having occurred on a Monday afternoon. Tr. 66.[3] The first Monday after the February 17, 1982 board meeting was February 22, 1982. If that date or any date thereafter were correct, the action would be timely-filed.

Unlike the foregoing evidence, the rest of plaintiff's evidence on the statute of limitations issue dates from a time after this suit was filed, so that plaintiff's statements may reflect an awareness that his entire lawsuit was in danger of being dismissed as untimely.

At his December 1, 1988 deposition in connection with this lawsuit, Solimino steadfastly maintained that the meeting with Drewitz occurred on Monday, February 22, 1982 (Solimino Dep. 112, 117), although he also affirmed that every statement made on his Charge of Discrimination form was correct. Solimino Dep. 85–86.[4]

Finally, in connection with this motion, plaintiff has submitted his own affidavit and that of his wife. The affidavits allege that the meeting with Drewitz occurred on Monday, February 22, 1982.

■ In considering this motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S.*

*Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citations omitted). Summary judgment is inappropriate where, as here, a factual dispute exists as to the accrual date of a cause of action, and resolution of that dispute will determine whether or not the action is time-barred. *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F.Supp. 832, 844 (S.D.N.Y.1988). *See also Helm v. South African Airways*, No. 84 Civ. 5404, 1987 WL 13195 (S.D.N.Y. June 25, 1987) (1987 U.S.Dist. LEXIS 5671) (in action under ADEA, fact dispute over date action accrued precluded summary judgment on statute of limitations grounds); *Hawley v. L.B. Smith, Inc.*, No. 82 Civ. 6372–CSH, 1985 WL 334 (S.D.N.Y. Feb. 25, 1985) (LEXIS, Genfed library, Dist. file) (same); *United States v. Becker*, No. 86 Civ. 3946, 1989 WL 34048 (S.D.N.Y. April 4, 1989) (1989 U.S. Dist. LEXIS 3227) (fact dispute over date on which tax assessment was made precluded summary judgment on statute of limitations grounds).

Accordingly, this ground for defendant's motion is rejected.

## II.  ADMINISTRATIVE ESTOPPEL

■ Defendant argues that the unreviewed[5] decision of the New York State Division of Human Rights ("DHR") denying plaintiff's age discrimination claim has preclusive effect in this federal court action. Plaintiff disputes this, and argues alternatively that even if this were true, the DHR hearing did not meet constitutional standards of due process and therefore

---

**3.** While Mr. Solimino's prior consistent statement might be inadmissible hearsay, the hearing transcript in which it appears was attached to *defendant's* moving papers, and defendant sought no evidentiary ruling on its admissibility. Consequently, it is not error for the court to consider it on motion for summary judgment. *In re Teltronics Services*, 762 F.2d 185, 192 (2d Cir.1985) (party opposing summary judgment waived objections to affidavits not made on personal knowledge by not motioning the district court to strike them); *Walker v. Wayne County, Iowa*, 850 F.2d 433, 435 (8th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 791, 102 L.Ed.2d 783 (1989) (same with respect to affidavits containing hearsay); *Williamson v. United*

*States Department of Agriculture*, 815 F.2d 368, 383 (5th Cir.1987) (same).

**4.** The court rejects defendant's contention that plaintiff's deposition testimony at 117–18 is an admission that the February 18, 1982 notice of termination date on the Charge is correct. Clearly, plaintiff merely voiced approval of the *March* 18, 1982 date stamped on the face of the Charge, indicating when it was received.

**5.** The court does not view plaintiff's state court action as having sought or obtained judicial review of DHR's findings as to his age discrimination claim. *See* "FACTS," *supra*.

provides no basis for administrative estoppel.

The court agrees that the DHR hearing, although unreviewed by the state courts, has preclusive effect in this federal court action.

No Supreme Court or Second Circuit opinion deals with the question whether a state agency's unreviewed rejection of an age discrimination claim has preclusive effect in a subsequent federal court action brought under the ADEA. However, two Courts of Appeal have dealt expansively with the issue, reaching opposite conclusions. *Duggan v. Board of Education of East Chicago Heights*, 818 F.2d 1291 (7th Cir.1987) (unreviewed agency decision not preclusive); *Stillians v. State of Iowa*, 843 F.2d 276 (8th Cir.1988) (unreviewed agency decision preclusive).[6]

The conflicting rulings in *Stillians* and *Duggan* reflect divergent interpretations of the Supreme Court's decision in *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). *Elliott* held that an unreviewed state agency determination was not binding on a federal court with respect to a Title VII claim, but was binding with respect to a claim under 42 U.S.C. § 1983.

As to the Title VII claim, the Court's holding turned on a Title VII provision, 42 U.S.C. § 2000e–5(b), requiring the EEOC to give "substantial weight" to prior state proceedings. The Court noted that "it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Id.*, 478 U.S. at 795, 106 S.Ct. at 3225 (citing *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 470 n. 7, 102 S.Ct. 1883, 1891 n. 7, 72 L.Ed.2d 262 (1982)).[7] Because of the inconsistency between according state agency findings "substantial weight" and according them preclusive effect, the Court concluded that Congress did not intend for state agency findings to bind a federal court in a Title VII suit.

However, with respect to plaintiff's § 1983 claim, the Court reached the opposite conclusion because it found that—in contrast with Title VII—nothing in the language or legislative history of § 1983 "remotely express[ed] any congressional intent to contravene the common-law rules of preclusion[.]" *Id.*, 478 U.S. at 797, 106 S.Ct. at 3226 (quoting *Allen v. McCurry*, 449 U.S. 90, 97, 101 S.Ct. 411, 416, 66 L.Ed.2d 308 (1980)). Observing that it had already approved the concept of administrative estoppel in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), and that administrative estoppel served the same "unifying" function as the Constitution's Full Faith and Credit Clause, the Court held that, absent a showing of contrary Congressional intent, "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact before it which the parties have had adequate opportunity to litigate,' ... federal courts must give the agency's factfinding the same pre-

---

6. Other opinions dealing with this issue do so only in *dicta,* or contribute little to the analyses contained in *Duggan* and *Stillians.* The Ninth Circuit found administrative estoppel unavailable on the facts of the case before it in *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282–84 (9th Cir.1986), but apparently assumed, without analysis, that unreviewed state agency findings could be preclusive in a federal ADEA suit. The Eleventh Circuit found administrative estoppel unavailable on the facts of the case before it in *Delgado v. Lockheed Georgia Co.,* 815 F.2d 641, 646 (11th Cir.1987), but expressed the view in *dicta* that unreviewed state agency findings should *not* be entitled to preclusive effect in federal ADEA suits. *See also Frank v. Capital Cities Communications, Inc.,* 689 F.Supp. 334 (S.D.N.Y.1988) (declining to reach issue where preclusion not available on the facts at

bar). The court in *Ibrahim v. New York State Department of Health,* 692 F.Supp. 1471, 1473–74 (E.D.N.Y.1988) adopted the Seventh Circuit's reasoning in *Duggan,* holding that unreviewed state agency findings are not preclusive in federal ADEA suits. Other decisions rendered prior to the Supreme Court's important decision in *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) need not be discussed.

7. The Court also observed that it had already held in *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) that a *federal* agency's rejection of an employment discrimination claim had no preclusive effect in a subsequent Title VII suit. *Id.*

clusive effect to which it would be entitled in the State's courts." *Id.*, 478 U.S. at 799, 106 S.Ct. at 3227 (quoting *Utah Construction*, 384 U.S. at 422, 86 S.Ct. at 1560).

Thus, *Elliott* teaches that administrative estoppel is presumed to be appropriate in any federal cause of action, absent a showing of Congressional intent to "contravene the common-law rules of preclusion[.]" *Id.*, 478 U.S. at 797, 106 S.Ct. at 3226. Conversely, administrative estoppel is only inappropriate where the language or legislative history of the federal statute actually addresses the issue of the proper weight to be afforded state agency findings, and accords them something less than preclusive effect.

That is precisely the way the Eighth Circuit read *Elliott* in its *Stillians* opinion. *Stillians* expanded upon the concept, implicit in *Elliott*, of a presumption that existing common-law principles (including rules of preclusion) survive a Congressional enactment except when a contrary Congressional purpose is evident:

> When interpreting a statute we should not forget what existed before it was enacted. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank v. New Jersey Dep't. of Envtl. Protection*, 474 U.S. 494, 106 S.Ct. 755, 759–60, 88 L.Ed.2d 859 (1986). More explicitly, "[s]tatutes which invade the common law * * * are to be read with a presumption favoring the rentention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *Isbrandtsen v. Johnson*, 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952).

*Id.*, 843 F.2d at 280–81 (brackets and ellipses in the original).

*Stillians* cautioned that, in determining whether a "statutory purpose" to displace common-law rules of preclusion is "evident," courts must set aside their own legislative and policy preferences and look solely to Congressional intent:

Thus, the most important lesson to be learned from *Elliott* is that when a federal statute does not specifically address a particular issue, in order to decide that issue we must ascertain Congressional intent. Title VII claims are not precluded [by unreviewed state agency findings] because the Court found evidence that Congress intended that result. Likewise, traditional rules of preclusion were left untouched by 42 U.S.C. § 1983 because that was the intent of Congress.

Ascertaining Congressional intent is often a difficult endeavor. When a statute does not speak on an issue and the legislative history is silent, we are forced to decide between two conflicting results. Our decision should not be based on our opinion of what direction the statute should take. If the result intended by Congress seems inconsistent with the overall objectives of the statute, so be it. Only Congress legislates and only Congress can amend.

*Id.*, 843 F.2d at 280.

The opinion in *Stillians* went on to hold, in essence, that the presumption favoring retention of common-law rules of preclusion had not been rebutted where the ADEA's language and legislative history gave no indication of Congress's intent regarding the preclusive effect of unreviewed state findings. In reaching that conclusion, the Eighth Circuit found the ADEA's lack of any provision like § 2000e–5(b) highly probative, although not dispositive:

> One of the major factors in the Supreme Court's reasoning in *Elliott* was [42] U.S.C. § 2000e–5(b) which provides, in part, that the EEOC must "accord substantial weight to final findings and orders made by the State or local authorities in proceedings commenced under State or local [employment discrimination] law." 106 S.Ct. at 3225. Because giving substantial weight is inconsistent with giving preclusive effect, the Court had some indication of Congressional intent to guide it.

We believe that the absence of a similar provision from the ADEA goes far toward resolving the issue before us.

While we may not wish to imply Congressional intent from the absence of a similar provision, the applicability of *Elliott* to the present case certainly is weakened by its absence. When the only statutory language upon which the Court focused is absent it seems illogical to infer an identical Congressional intent simply because other sections of the statutes may be similar.

*Id.*, 843 F.2d at 281–82.

The court also reasoned that denying preclusive effect to state agency findings would reduce state agency proceedings to little more than a dress rehearsal for a subsequent federal suit under the ADEA:

> For example, after the sixty-day period required by 29 U.S.C. § 633(b), the petitioner may supersede any further state proceedings by filing suit in federal court. 29 U.S.C. § 633(a). Given that the petitioner has the discretion to forego state remedies in favor of a federal lawsuit, it is not at all unfair to require the petitioner to live with his decision. If the petitioner chooses to remain in the state system and loses at the administrative level it seems ludicrous to give him the choice of either appealing to the state courts and thereby being barred in federal court by 28 U.S.C. § 1738 [requiring federal courts to give state court judgments the same preclusive effect they would have in state court], or filing suit anew in the federal district court. Were we to allow such a choice the state administrative proceeding would be reduced to nothing more than an opportunity for the petitioner to test his case and practice his presentation.

*Id.*, 843 F.2d at 282.

The Seventh Circuit, reaching the opposite conclusion in *Duggan*, construed the Supreme Court's decision in *Elliott* as requiring it to "determine whether there are enough parallels between Title VII and the ADEA to justify" the inference that, in drafting the ADEA, Congress meant to reject administrative estoppel. *Id.*, 818 F.2d 1294. In comparing the two statutory schemes, the Seventh Circuit—quite unlike the Supreme Court in *Elliott*—decided to focus on their respective "deferral mechanisms," meaning the statutory provisions giving the appropriate state agency a "limited opportunity to consider [the claim] before the federal machinery can be set in motion." *Id.*, 818 F.2d at 1295.

First, the court noted that the deferral mechanisms of both Title VII and the ADEA support an inference that state agency findings are not entitled to deference. For example, both statutes permit state agency determinations to be superceded by federal agency action—after 60 days under Title VII, or by filing a claim directly with the EEOC under the ADEA. *Id.*, 818 F.2d at 1295–96 (citing Title VII, 42 U.S.C. § 2000e–5(c) and the ADEA, 29 U.S.C. § 633(b)). Under both statutes, concurrent or subsequent EEOC investigations would be rendered superfluous if the state agency findings had preclusive effect. Furthermore, the court found it "anomalous" to conclude that state agency findings should have preclusive effect when EEOC findings do not. *Id.*, 818 F.2d at 1295 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798–99, 93 S.Ct. 1817, 1822–23, 36 L.Ed.2d 668 (1973)).[8]

Second, the court found that, to the extent that the ADEA's deferral mechanisms differed from Title VII's, the differences indicate that, "if anything, less deference is due state proceedings under the ADEA than under Title VII." *Id.*, 818 F.2d at 1296. Because the filing of a federal ADEA action stays any state proceedings, the ADEA—unlike Title VII—never affords the state agency a period of exclusive

---

**8.** The Supreme Court made the same observation in *dicta* in *Kremer*, 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7, and this *dicta* became the basis of the Sixth Circuit opinion affirmed by the Supreme Court in *Elliott*. *See Elliott*, 478 U.S. at 793, 106 S.Ct. at 3223. However, as previously discussed, the Court's opinion in *Elliott* appeared to rely upon the inconsistency between the "substantial weight" standard of § 2000e–5(b) and the total preclusion available under common law. The Court did not reiterate or appear to rest its decision upon *Kremer*'s statement in *dicta* that Congress would not have afforded state agency proceedings preclusive effect while denying such effect to EEOC findings.

jurisdiction. *Id.*, 818 F.2d 1296 (citing 29 U.S.C. § 633(a)). Moreover, under the ADEA—unlike Title VII—the claimant can file charges with the EEOC and the state agency simultaneously. *Id.*, 818 F.2d at 1295–96 (citing 29 U.S.C. § 633(b)).

Third, the court addressed what it conceded to be the employer's "strongest argument": namely, that the Supreme Court in *Elliott* focused on Title VII's "substantial weight" provision, § 2000e–5(b), and not on the structure of Title VII's deferral mechanisms, in determining that Congress intended to displace the common law of preclusion in enacting the ADEA. The Seventh Circuit stated that § 2000e–5(b) "is simply the most obvious piece of evidence that administrative *res judicata* does not operate in a Title VII suit. Thus, it is not surprising that the Court in *Elliott* heavily relied on this provision. The absence of a comparable section in the ADEA is certainly not fatal to [plaintiff]." *Id.*, 818 F.2d at 1296.[9]

The Seventh Circuit's opinion depends upon its debatable assumption that the Supreme Court in *Elliott* became so thoroughly distracted by "the most obvious piece of evidence"—*i.e.*, the "substantial weight" provision contained in § 2000e–5(b)—that it failed to articulate the true basis of its decision—*i.e.*, the lack of deference implicit in the structure of Title VII's "deferral mechanisms." This court will not make that assumption. The

Supreme Court is capable of articulating its reasoning and its reasoning in *Elliott* is clearly articulated.

Furthermore, the Seventh Circuit's opinion improperly conflates the issues of "deferral" and "preclusion." The Supreme Court has not been receptive to similar attempts to read more into the deferral provisions of Title VII and the ADEA than the structure and purpose of those provisions will support. *See Kremer,* 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7 (it would be "implausible" to find that Title VII's deferral provision implicitly repealed the federal statute granting state court judgments preclusive effect in federal court when "that [deferral] provision does not even address the issue of the proper weight to be afforded state decisions"); *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 756–57, 99 S.Ct. 2066, 2071–72, 60 L.Ed.2d 609 (1979) (rejecting argument that differences between deferral provisions of Title VII and ADEA indicated that "the ADEA pays less deference to state agencies and that, as a consequence, ADEA claimants have the option to ignore state remedies").

Deferral and preclusion are not equivalent in effect or purpose. Deferral mechanisms simply give the state agency the "first crack" at the claim. Preclusion, in contrast, gives the state agency the "last word" on the claim in a limited class of cases (*i.e.*, those in which the state agency rules within 60 days, or rules after 60 days

---

**9.** Relying on a footnote in *Kremer,* the Seventh Circuit noted that the legislative history of the 1972 amendments to Title VII indicates that Congress added the "substantial weight" provision of § 2000e–5(b) in order to *increase* the EEOC's deference to state agency findings, which the EEOC previously had been free to ignore. The court concluded that it would be "far-fetched" to construe the ADEA's *lack* of a provision *increasing* deference to state agency findings as indicating that Congress intended to give preclusive effect to such findings. *Id.*, 818 F.2d at 1297 (citing *Kremer,* 456 U.S. at 470 n. 8, 102 S.Ct. at 1892 n. 8).

It is true, as the Seventh Circuit observed, that in *Kremer,* the Supreme Court invoked this bit of legislative history to find that Title VII's "substantial weight" provision could not have implicitly repealed a federal statute (28 U.S.C. § 1738) granting state court judgments "full faith and credit" in federal court. However, in

the same footnote, the Court found it "even more implausible" to find an implied repeal of § 1738 in Title VII's *deferral* provision, 42 U.S. C. § 2000e–5(c)—the very provision upon which the Seventh Circuit's analysis largely turns. *Kremer,* 456 U.S. at 470 n. 8, 102 S.Ct. at 1892 n. 8.

In short, *Kremer* features language inconsistent with the reasoning of *both* the Seventh and Eighth Circuits. Moreover, its reading of § 2000e–5(b) is manifestly inconsistent with *Elliott*'s reading of the same provision. Since *Kremer* is not as recent as *Elliott,* and since *Kremer* involved the preclusive effect of a state *court* judgment under § 1738 rather than the preclusive effect of an unreviewed state agency finding under the federal common-law rules of preclusion applicable here, the court will be guided by *Kremer* only where it is consistent with *Elliott. See Elliott,* 478 U.S. at 794, 106 S.Ct. at 3224.

but before the claimant files a federal action. *See* 29 U.S.C. § 633(a) and (b)). Deferral "is intended to screen from the federal courts those discrimination complaints that might be settled to the satisfaction of the grievant in state proceedings." *Evans,* 441 U.S. at 756, 99 S.Ct. at 2071. While preclusion, like deferral, helps conserve judicial resources, it "also serves the value of federalism," and, like the Constitution's Full Faith and Credit clause, " 'act[s] as a nationally unifying force.' " *Elliott,* 478 U.S. at 798–99, 106 S.Ct. at 3226–27 (quoting *Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 289, 100 S.Ct. 2647, 2664, 65 L.Ed.2d 757 (1980) (White, J., concurring in judgment)). Thus, preclusion serves a more important value than deferral, and statutory deferral mechanisms are not an accurate indicator of Congressional intent to displace common-law rules of preclusion.

Rather than comparing the ADEA's deferral mechanisms to those in Title VII, the proper inquiry under *Elliott* is whether or not any provision of the ADEA evinces a Congressional intent to "contravene the common-law rules of preclusion[.]" *Elliott,* 478 U.S. at 797, 106 S.Ct. at 3226; *accord Stillians,* 843 F.2d at 281.[10] More specifically, the approach taken by the Supreme Court in *Elliott* dictates that the court examine the ADEA to see whether it contains any provision—like the "substantial weight" provision of Title VII—which addresses the issue of the proper weight to be afforded state agency findings, and which accords such findings something less than preclusive effect.

The court finds no such provision in the ADEA. Moreover, had Congress wanted to demonstrate an intent to displace the common-law rules of preclusion, it could have amended the ADEA to include a provision evidencing that intent, just as it did in 1972 by adding § 2000e–5(b) to Title VII.

As the Eighth Circuit stated in *Stillians,* "[o]nly Congress legislates and only Congress can amend." *Id.,* 843 F.2d at 280. This court would be implicitly amending the ADEA if it were to hold that the ADEA displaces common-law rules of preclusion. The court declines to do this. Rather, following *Elliott* and *Stillians,* it will adhere to the presumption that state findings—including unreviewed state agency findings —can have preclusive effect in an ADEA action in federal court.

· This result does not denigrate the important right protected by the ADEA. The Supreme Court in *Elliott* found that unreviewed state agency findings have preclusive effect even in cases brought under 42 U.S.C. § 1983 to vindicate fundamental liberty and property rights guaranteed by the Constitution. There is no reason to suppose that a right created by statute should be accorded greater solicitude, absent a showing that Congress intended to do so.

■ The court also rejects plaintiff's argument that the hearing afforded him by the state agency failed to meet the requirements of constitutional due process.

The elements of administrative estoppel are:

1) the agency was acting in a judicial capacity;

2) the disputed issues of fact were properly before the agency and the parties were given an adequate opportunity to litigate them; and

3) the courts of that particular state would give the agency's factfinding determinations preclusive effect. *Elliott,* 478 U.S. at 797–98, 106 S.Ct. at 3225–26 (quoting *Utah Construction,* 384 U.S. at 422, 86 S.Ct. at 1560); *Kirkland v. City of Peekskill,* 828 F.2d 104, 107 (2d Cir.1987).

---

**10.** The Eighth Circuit recognized this in *Stillians* when it rejected the Seventh Circuit's methodology of "reason[ing] by analogy" from the provisions of Title VII:

> Comparing the ADEA with Title VII and 42 U.S.C. § 1983 [as the Seventh Circuit did in *Duggan* ] does not address the ultimate issue whether Congress intended to abrogate traditional rules of preclusion when it enacted the

ADEA. Even if the ADEA more closely parallels Title VII and § 1983, if Congress did not intend to abrogate preclusion when it enacted the ADEA, then preclusion should still apply. We should not reason by analogy when interpreting statutes. The proper analysis is to examine the ADEA on its own rather than merely compare and contrast it with Title VII. *Id.,* 843 F.2d at 281 (footnote omitted).

The agency obviously was acting in a judicial capacity, and the court's independent reading of the hearing transcript persuades it that the parties—each of whom were represented by counsel—had adequate opportunity to litigate the factual disputes resolved by the agency. Moreover, the Supreme Court has confirmed the constitutional adequacy of a virtually identical procedure used by the same New York agency to adjudicate employment discrimination charges. *Kremer,* 456 U.S. at 479–85, 102 S.Ct. at 1896–99; *accord Kirkland,* 828 F.2d at 107–09. Finally, the Second Circuit has held that New York state courts would give preclusive effect to a DHR hearing. *Kirkland, supra. See also Brugman v. City of New York,* 102 A.D.2d 413, 477 N.Y.S.2d 636 (1st Dep't 1984), *aff'd,* 64 N.Y.2d 1011, 489 N.Y.S.2d 54, 478 N.E.2d 195 (1985). Thus, all the elements of administrative estoppel have been satisfied here.

Having determined that unreviewed state agency findings can have preclusive effect in a federal ADEA suit, and that the unreviewed state agency finding in this case is entitled to such deference, all that remains is to determine the effect of those findings on plaintiff's cause of action under the ADEA. The state agency found the following facts:

> The record considered as a whole does not support complainant's allegations that he was denied equal terms, conditions and privileges of employment and terminated because of his age. The record supports respondent's position that complainant was terminated because the position of Vice President which complainant held was eliminated due to the low volume of work performed by respondent's Mortgage Origination Department. There is no evidence in the file that complainant's age was a factor in his termination.

Determination and Order After Investigation, annexed as Exhibit 6 to the Moving Affidavit of Anthony H. Atlas.

Since these findings bind this court, the plaintiff cannot prove his claim under the ADEA that his employer "discharge[d him] or otherwise discriminate[d] against [him] with respect to his compensation, terms, conditions, or privileges of employment, because of [his] age[.]" 29 U.S.C. § 623(a)(1).

Accordingly, defendant's motion for summary judgment is granted.

SO ORDERED.